[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-12665

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 19, 2004
THOMAS  K. KAHN
CLERK

D. C. Docket No. 01-06215-CR-AJ


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellant,

                        versus

WILLIAM P. TRAINOR,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 19, 2004)**

Before BLACK, BARKETT and MAGILL[*], Circuit Judges.

BLACK, Circuit Judge:

_____

[*] Honorable Frank J. Magill, United States Circuit Judge for the Eighth Circuit, sitting by designation.

This appeal arises from Defendant-Appellee William P. Trainor's motion to dismiss 19 counts of the superseding indictment charging him with wire fraud, money laundering, and tax evasion. The district court granted the motion to dismiss, finding the challenged counts barred by the applicable statute of limitations. The primary issue on appeal is whether the Government satisfied the requirements of 18 U.S.C. § 3292(a)(1), under which "the government may apply, ex parte, for suspension of the statute of limitations when it seeks evidence located in a foreign country." *United States v. Torres*, 318 F.3d 1058, 1061 (11th Cir.), *cert. denied*, __ U.S. __, 124 S. Ct. 50 (2003). Specifically, we must determine whether an unsworn application, accompanied by only a copy of an evidentiary request sent to a foreign government, satisfies § 3292's requirement that the Government demonstrate, by a preponderance of the evidence, that evidence concerning the charged offense reasonably appears to be located in the foreign country. We conclude that such a submission does not satisfy § 3292 and affirm the dismissal order.

## I. BACKGROUND

A. *The Office of International Affairs Request*

Trainor has been the subject of investigations by both the Department of Justice (DOJ) and the Securities and Exchange Commission (SEC) for several

2

years. On October 17, 2000, the Criminal Division of DOJ's Office of International Affairs (OIA) sent a transmittal letter (hereinafter, the OIA request) to the Ministry of Justice in Switzerland, seeking evidence relating to (1) an SEC complaint against Trainor and others (including New England Diagnostics, Inc., and Novatek International, Inc.) for violation of federal securities laws, and (2) a DOJ investigation into the possibility that Trainor had committed securities fraud, mail fraud, wire fraud, and money laundering.

The OIA request described an alleged fraudulent scheme in which Novatek, a publicly traded company incorporated in Colorado and operated in Florida, acquired an exclusive license to distribute certain medical products purportedly manufactured by Universal HealthWatch, Inc., through a series of sham transactions involving several entities either owned or controlled by Trainor and Vincent D. Celentano. Among the fraudulent activities was the public sale of securities in HealthCare, Ltd., a purported Russian company that was, in fact, owned by New England Diagnostics (NED). Allegedly, Trainor and Celentano represented Schweitzer as NED's owner. In reality, NED was controlled by Trainor and operated by his daughter in Massachusetts.

The OIA request identified Schweitzer as a Swiss citizen with the following address: Seestrosso No. 1, Cham 6330, Switzerland. The OIA asked the Swiss

3

authorities to obtain various documents in Schweitzer's possession relating to Trainor, NED, and Novatek, and to secure Schweitzer's sworn testimony concerning his involvement with these individuals and companies.

On March 30, 2001, the Swiss Ministry of Justice informed DOJ that it had been unable to locate Schweitzer at the address provided, or the firm Kenk & Schweitzer identified in the OIA request, and requested additional information. Three days later, the OIA provided Swiss authorities with an alternate address for Schweitzer. In June of 2001, the Swiss police located Schweitzer at the second address, and the OIA submitted follow-up inquiries to the Swiss authorities which ultimately resulted in Schweitzer's agreement to testify in Switzerland in late 2002.

B. *The Tolling Request*

Meanwhile, on April 6, 2001, the Government filed, ex parte, a sealed motion in the district court to suspend the statute of limitations pursuant to 18 U.S.C. § 3292. Section 3292 allows for the tolling of the statute of limitations in a criminal case upon application of the Government if the judge to whom the application is presented "finds by a preponderance of the evidence" that (1) the Government has made an official request for evidence located in a foreign country,

and (2) "it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." 18 U.S.C. § 3292(a)(1).

The caption of the Government's motion listed Novatek as the subject of the grand jury investigation. The clerk's office informed the Government that the caption could not contain the name of a subject of a grand jury investigation and that, whereas the proposed order accompanying the motion provided a signature line for a magistrate judge, tolling orders could only be signed by a district judge. The Government filed a corrected motion on April 10, 2001.

The Government's motion sought to toll the limitations period from October 17, 2000—the date the OIA request for assistance was transmitted to Switzerland—to the date on which the Swiss authorities would take final action on the request. In the memorandum accompanying its motion, the Government described the grand jury investigation concerning Trainor and the alleged securities fraud, summarized OIA request, and explained why the issue concerning ownership and control of NED was important to the investigation. The Government contended the attached OIA request for assistance satisfied § 3292's first requirement—i.e., it showed the Government made an official request.

Apparently to satisfy the second requirement, the Government also provided in its memorandum the following summary of the evidence in its possession:

> Documents obtained by the grand jury have identified Schweitzer as the holder of bearer stock of NED, as a Swiss resident, and have identified his business address as being in Switzerland. Agreements pertinent to NED and Schweitzer have identified Schweitzer's address in Switzerland. Witnesses interviewed by the Federal Bureau of Investigation have also stated that Trainor and Celentano represented to them that Schweitzer was the owner of NED and have identified Schweitzer as a Swiss resident.

Significantly, none of the referenced documents were attached to the motion and neither the memorandum, nor the attached OIA request, were sworn or verified.

On May 10, 2001, the district court signed a sealed order granting the Government's ex parte motion to toll the statute of limitations under § 3292 from October 17, 2000, until the date Switzerland took final action on the OIA request for assistance, but in any case not longer than three years.

C. *Post-Indictment Proceedings*

A grand jury returned an indictment against Trainor on September 20, 2001, charging him with eleven counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 1–11), two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Counts 12–13), two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 14–15), six counts of engaging in

monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 (Counts 16–21), and seeking forfeiture under 18 U.S.C. § 982 and 21 U.S.C. § 853(p). A superseding indictment was returned on June 13, 2002, adding three counts of tax evasion in violation of 26 U.S.C. § 7201.

After the return of the indictment, the case was assigned to a different district judge than the one who had granted the § 3292 motion. In October 2002, Trainor filed a motion to dismiss counts 1–10, 12–14, and 16–21 as barred by the catchall five-year statute of limitations for noncapital offenses, 18 U.S.C. § 3282.[1] Among the arguments put forth in the motion, Trainor asserted there could be no valid tolling because the Government did not present the district court with any evidence to satisfy the preponderance of the evidence standard set out in 18 U.S.C. § 3292. The district court granted Trainor's motion to dismiss on this basis and this appeal followed.

## II.  STANDARD OF REVIEW

The district court's findings of fact are reviewed for clear error. *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003). The proper interpretation of a statute, however, is a question of law that we review de novo. *Dysert v.*

---

[1] Counts 11 (wire fraud), 15 (money laundering under § 1956(a)(1)(B)(i)), and 22–24 (tax evasion) related to conduct that occurred after September 20, 1996, and, thus, within the limitations period.

*United States Sec'y of Labor*, 105 F.3d 607, 609 (11th Cir. 1997); *see also Atl. Land & Improvement Co. v. United States*, 790 F.2d 853, 857 (11th Cir. 1986) (application of statute of limitations is question of law reviewed de novo).

### III.  DISCUSSION

Absent tolling of the statute of limitations under § 3292, 19 of the 24 counts of the superseding indictment are time barred under the five-year statute of limitations set out in 18 U.S.C. § 3282.  Thus, as the district court observed, the outcome of this case turns on the meaning of § 3292's preponderance of the evidence standard, and whether the Government satisfied that standard.

### A.  *The Statutory Language*

Where there is a question of statutory interpretation, "we begin by examining the text of the statute to determine whether its meaning is clear."  *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc).  Indeed, "'[i]n construing a statute we must begin, and often should end as well, with the language of the statute itself.'"  *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997)); *see also Harry*, 291 F.3d at 772 ("Where the language of a statute is unambiguous, as it is here, we need not, and ought not, consider legislative history.").

Section 3292(a)(1) provides:

Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court *finds by a preponderance of the evidence* that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1) (emphasis added). "We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431, 120 S. Ct. 1479, 1488 (2000) (citations and internal quotations omitted); *see also Consol. Bank, N.A. v. United States Dep't of Treasury*, 118 F.3d 1461, 1463–64 (11th Cir. 1997).[2] Moreover, we presume that when Congress drafts legislation incorporating common law terms it is aware of well-established judicial construction of those terms. *See Morissette v. United States*, 342 U.S. 246, 263, 72 S. Ct. 240, 250 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably

---

[2] Even where there is an indication Congress intended the words of a statute to bear a different or unusual meaning, however, "'we do not resort to legislative history to cloud a statutory text that is clear.'" *Harry*, 291 F.3d at 772 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147–48, 114 S. Ct. 655, 662 (1994) (superceded by statute on other grounds) (footnote omitted)). "[W]e do not give legislative history more weight than unambiguous statutory language." *Id.*

9

knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."); *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) ("[W]here 'a federal criminal statute uses a common law term without defining it, the term is given its common law meaning.'") (quoting *United States v. Bell*, 505 F.2d 539, 540 (7th Cir. 1974)).

As the district court correctly observed, the term "preponderance of the evidence" is a common law term of longstanding use. "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence . . . ." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 622, 113 S. Ct. 2264, 2279 (1993) (internal quotation marks omitted). Even were we unable to resist the temptation to consider legislative history here, *see Harry*, 291 F.3d at 772, there is nothing in the legislative history of § 3292 to suggest that Congress intended to ascribe a meaning to this standard different from longstanding judicial construction of the standard, *see, e.g.*, H.R. Rep. 98-907 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3578.

With this well-established judicial construction of the preponderance of the evidence standard in mind, we must determine what "evidence" is required by the

standard. Wigmore defines evidence as "any matter of fact that is furnished to a legal tribunal otherwise than by reasoning or a reference to what is noticed without proof—as the basis of inference in ascertaining some other matter of fact." 1 John Henry Wigmore, *Evidence in Trials at Common Law* § 1 (Tillers rev. 1983) (footnote omitted). In other words, evidence is "[s]omething (including testimony, documents and tangible objects) that tends to prove or disprove the existence of an alleged fact." *Black's Law Dictionary* 576 (7th ed. 1999). In addition, evidence must bear some minimum mark of trustworthiness to have any value to the trier of fact. For example, many of the Federal Rules of Evidence—such as the rules regarding hearsay, expert testimony, authentication of documentary evidence, and the oath requirement—are geared toward ensuring a degree of reliability. Thus, to have evidentiary value, the submitted material, be it testimony or documents, must tend to prove or disprove the existence of a material fact and, more importantly for our purposes, must include, or be accompanied by, some indicia of reliability.

The minimum threshold of reliability will, of course, vary depending on the procedural context. Evidence inadmissible at trial as hearsay, for example, may be admissible during sentencing *if* the evidence has sufficient indicia of reliability. *United States v. Zlatogur*, 271 F.3d 1025, 1031 (11th Cir. 2001). Although evidence submitted under § 3292 does not require the same degree of reliability as

11

evidence submitted at trial, the nature of § 3292 proceedings suggests the

Government must provide evidence bearing some indicia of reliability. For

instance, a § 3292 tolling request is tied to an underlying grand jury

proceeding—the statute requires the tolling application to be "filed before return

of an indictment," with "the district court before which a grand jury is

impaneled."[3] In the grand jury context, where hearsay testimony may be

presented, the witness testifying as to hearsay statements still must be under oath.

*See United States v. McHan*, 101 F.3d 1027, 1038 (4th Cir. 1996) (noting that

"[g]rand jury testimony is given in the solemn setting of the grand jury, under oath

and the danger of perjury"). The oath is an important indicia of reliability. "It is

designed to ensure that the truth will be told by insuring that the witness or affiant

will be impressed with the solemnity and importance of his words." *United States

v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977); *see also* 2 *McCormick on Evidence*

§ 245, at 93 (5th ed. 1999) (observing that the oath "may induce a feeling of

special obligation to speak the truth, and it may also impress upon the witness the

---

[3] The Federal Rules of Evidence do not apply to grand jury proceedings. Fed. R. Evid. 1101(d)(2)–(3) (excluding grand jury and other "miscellaneous" proceedings from application of the rules of evidence). We need not reach whether the rules of evidence apply to § 3292 proceedings because, in this case, the Government provided no reliable evidence.

12

danger of criminal punishment for perjury, to which the judicial oath or an equivalent solemn affirmation would be a prerequisite condition.").

The requirement that the Government present evidence bearing at least some indicia of reliability is further supported by the ex parte nature of § 3292 proceedings. *See Torres*, 318 F.3d at 1061 ("Under § 3292, the government may apply, ex parte, for suspension of the statute of limitations . . . ."). Because the defendant may not be present, the district court is responsible for ensuring that his interests are protected. *See United States v. Adams*, 785 F.2d 917, 920 (11th Cir. 1986) (requiring district court to ensure that defendant's rights are protected when conducting ex parte proceedings). The district court can do this only if it is given something with evidentiary value, that is, something bearing indicia of reliability, to evaluate. Not coincidentally, other ex parte proceedings also require more than mere assertions by the Government. *See, e.g.*, 18 U.S.C. § 2518(1) (requiring the Government, when seeking a wiretap order, to provide certain information in writing under oath); Fed. R. Crim. P. 41(d) (detailing types of evidence a law enforcement officer may present to a court to show probable cause to obtain a search warrant, including affidavits and sworn testimony).

Finally, § 3292 involves the tolling of a statute of limitations. All federal criminal statutes, save capital crimes, are subject to a statute of limitations. *See* 18

U.S.C. §§ 3281–3282. Statutes of limitations play an important role in ensuring the reliability of evidence presented at trial: by preventing stale claims—and the accompanying lost evidence and witnesses with faded memories—adjudication becomes both more efficient and more reliable. *See Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 694 (10th Cir. 1981); *see also Toussie v. United States*, 397 U.S. 112, 114–15, 90 S. Ct. 858, 860 (1970) (noting that statutes of limitations "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time," and "may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity."). Thus, statutes of limitations are themselves mechanisms for ensuring the reliability of evidence submitted in court proceedings. Given the function of statutes of limitations to protect criminal defendants from overly stale criminal charges and potentially unreliable witness accounts, *United States v. Phillips*, 843 F.2d 438, 443 (11th Cir. 1988), it makes perfect sense that § 3292 requires the Government to meet a minimum evidentiary burden before extending the limitations period.

In sum, we agree with the district court that the Government, when seeking to toll a statute of limitations under § 3292, must provide something with evidentiary value—that is, testimony, documents, proffers, and other submissions

bearing some indicia of reliability—tending to prove it is reasonably likely that evidence of the charged offenses is in a foreign country. Our reading of the § 3292 preponderance of the evidence requirement is quite broad and the Government may satisfy its burden by including a sworn or verified application containing the necessary factual information, testimony by Government officials, affidavits, declarations, exhibits, or other materials of evidentiary value. Indeed, as the district court noted, the Government's evidence could even include hearsay evidence. Although this "is not a high standard of proof," neither is it "a toothless standard." *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999). Accordingly, any evidentiary submission must meet a minimum threshold of reliability.

B. *The Government's Application*

The critical problem with the Government's tolling application in this case is that there is nothing to indicate the Government's assertions are reliable. The burden is on the Government to provide something of evidentiary value for the district court to evaluate. *See DeGeorge v. United States Dist. Court for the Cent. Dist. of Cal.*, 219 F.3d 930, 937 (9th Cir. 2000) ("[T]he government has some burden to establish, *as opposed to being able merely to assert without support*, that the foreign evidence it seeks meets the section's requirements.") (emphasis

15

added).  Here, the Government submitted to the court only its application and a copy of the OIA request.  As noted above, these documents described in the most general terms, in the span of only a paragraph, the evidence in the Government's possession that suggested evidence regarding Schweitzer was located in Switzerland.  No indicia of reliability, such as a verification or an affidavit, accompanied the application.  This mere summarization of evidence in the Government's possession (as even the Government characterizes its application), standing alone, does not satisfy the Government's burden here any more than it would in the grand jury context.  Any other interpretation renders the § 3292 preponderance of the evidence standard meaningless.  *See United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999) (providing "that 'courts should disfavor interpretations of statutes that render language superfluous'") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S. Ct. 1146, 1149 (1992)).

The Government, though, contends its submissions met § 3292's evidentiary requirements, noting that the district court accepted its submission as evidence that an official request for evidence had been made to Switzerland.  The Government argues it was inconsistent for the district court to find the Government satisfied the statute's first prong, but not the second prong (that it reasonably appeared the requested evidence was in Switzerland).  Specifically, the

16

Government contends that if the OIA request for assistance was competent evidence for purposes of demonstrating that a request had been made, then the assertion in that same document that a particular Swiss citizen owned one of the companies involved in the scheme at the relevant time, combined with an address for that person in Switzerland, should be sufficient to establish that it reasonably appeared such evidence was in Switzerland.

This argument is unpersuasive. Although something may be evidence for one purpose, it may not be for another. "Evidence is *always a relative term.*" Wigmore, *supra*, § 2. Of course, the OIA request itself was a sufficient basis on which the court could find by a preponderance of the evidence that an official request for evidence had been made to Switzerland. *See United States v. Wilson*, 249 F.3d 366, 371 (5th Cir. 2001) (holding district court did not clearly err in finding that Government representations and a copy of letter addressed to the Attorney General of the Bahamas demonstrated that request for evidence had been made). The production of the OIA request does not, however, establish it was reasonably likely the requested evidence was in fact in Switzerland. After all, the request could have been frivolous or simply made in error.

The Government did not present anything of evidentiary value to show it was reasonably likely that evidence was in Switzerland. As noted above, the

Government memorandum and the OIA request were not sworn or verified. A simple verification would have provided a significant mark of reliability. The court's ability to credit the submissions as reliable evidence was further hindered by the lack of detail in the Government submissions. The Government memorandum merely contained allegations that (1) Schweitzer had been identified by unspecified documents as a Swiss resident and the bearer holder of NED stock; (2) Schweitzer had a Swiss business address; and (3) witnesses interviewed by the FBI had identified Schweitzer as a Swiss resident.[4] In other words, the Government's submission constituted, at best, a summary of the evidence in its possession.

For these reasons, we agree with Trainor that, to demonstrate by a preponderance of the evidence that it reasonably appeared at the time of the OIA request that evidence was located in Switzerland, the Government had to do something more than provide an unsworn recitation of the evidence in its possession—such a submission is not evidence sufficient to satisfy § 3292.[5]

---

[4] The OIA request provided even less detail, stating only that "[v]arious documents identify Andreas Schweitzer as NED's owner at the time" of the fraudulent activities.

[5] The statute's evidentiary standard comports with our application of the preponderance of the evidence standard in several other situations. For example, when a defendant challenges assertions in a presentence investigation report, the Government must provide "some reliable proof [that allows] the court to conclude it is [likely] the statements are true." *United States v. Delgado*, 56 F.3d 1357, 1371 (11th Cir. 1995). Similarly, a defendant must provide evidence

18

The statute and the ex parte nature of the proceedings required the Government to provide some indicia of reliability that its assertions were accurate. The Government failed to do so and, thus, failed to satisfy § 3292's preponderance of the evidence standard.

C. *Future Prosecutions*

The Government insists that affirmance of the district court will curtail its ability to rely upon § 3292 tolling orders when seeking indictments. We do not believe such concern is warranted. Certainly, the Government can rely on validly issued tolling orders when based on evidence supporting a finding that it reasonably appears evidence is in a foreign country. It is true that, as with search warrants, a defect in the tolling application may be subject to post-indictment review upon a motion to dismiss. *See Wilson*, 249 F.3d at 372 (holding that district court erred in denying without a hearing defendant's motion for reconsideration of his earlier motion to dismiss where defendant presented

---

regarding mitigating circumstances to support a district court's downward departure. *United States v. Kapelushnik*, 306 F.3d 1090, 1095 (11th Cir. 2002) (noting that assertions by defense counsel at sentencing, standing alone, are an insufficient basis upon which to grant a downward departure). Likewise, when opposing a defendant's Rule 41 motion for return of property, mere government allegations, unsupported by affidavits or verified pleadings, are insufficient to show that property was destroyed. *United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001). Finally, even in the civil context of summary judgment, "conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

19

evidence suggesting the Government had never sent a request for assistance to the Bahamian Government). Just as district courts do not regularly overturn magistrates' probable cause determinations, however, we expect that an initial district court's preponderance of the evidence determination will not often be overturned by a later district court ruling on a post-indictment motion where the Government puts forward *some* reliable evidence. *See Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'"); *United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994) (same). The only reason we are faced with a post-indictment reversal in this case is the Government's failure to submit *any* evidence to support the § 3292 tolling order.

The Government argues that the district court should have equitably tolled the statute of limitations because it relied on what it thought to be a valid tolling order. Not only is equitable tolling "an extraordinary remedy which is typically applied sparingly," *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000), but also, when it is "raised for the first time on appeal[, it] is not properly before this court," *Hurley v. Moore*, 233 F.3d 1295, 1298 (11th Cir. 2000). Because the Government

20

failed to argue equitable estoppel before the district court, we decline to address the issue now.[6]

Finally, the Government's arguments concerning the burden this decision will impose upon it are belied by its filing of a sworn declaration by David Swanson, a Special Agent with the FBI, in opposition to Trainor's motion to dismiss. In this four-page declaration, Swanson described the evidence concerning Schweitzer and provided details absent in the tolling application or the OIA request. Because it was sworn under penalty of perjury, this declaration contains indicia of reliability not to be found in the Government's summary assertion of the evidence and, had it been presented to the district court with the Government's tolling motion, this declaration undoubtedly would have provided a sufficient evidentiary basis for the tolling order.[7]

---

[6] It is also conceivable the Government may still in good faith rely on a tolling order even when it is later determined to be defective. *Cf. United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984) (holding that reasonable, good faith reliance on a search warrant precludes application of the Fourth Amendment exclusionary rule). This argument has not been addressed by either party, however, and we decline to opine as to its application here.

[7] We agree with the district court that § 3292 requires the tolling application, including the evidence to be considered, be submitted prior to the return of an indictment. This Court has found only one case, *United States v. Wilson*, 322 F.3d 353 (5th Cir. 2003), in which new evidence was considered after the indictment was returned. In that case, however, the defendant presented evidence that the discovery request had never been sent to the Bahamian Government. *Id.* at 355. The Government was allowed to present new evidence to show the letter had been sent. *Id.* at 356. The court ultimately reversed Wilson's conviction on the ground that the Government failed to carry its burden. *Id.* at 364. Unlike *Wilson*, Trainor has not presented any new evidence, but rather argues that the Government failed to present sufficient evidence in the

21

Accordingly, we reject the Government's argument that requiring it to present some evidence upon which to base the tolling order—i.e., following the direction of the statute—will necessarily render § 3292 ineffective and tolling orders unreliable.

## IV.  CONCLUSION

Section 3292 requires the Government to satisfy the preponderance of the evidence standard.  Therefore, the Government must present *some* evidence—something of evidentiary value—that it reasonably appears the requested evidence is in a foreign country.  These evidentiary submissions necessarily must meet a minimum threshold of reliability.  In this case, the Government submitted in support of its motion only the OIA request and an unsworn memorandum summarizing in one short paragraph the evidence in its possession.  For purposes of the § 3292 inquiry as to whether it reasonably appears the requested evidence is in a foreign country, this is not sufficient.  Accordingly, the district court did not err by concluding the Government failed to carry its

---

first instance.  Therefore, the Swanson declaration cannot retroactively support the tolling order.

burden and dismissing the counts of the indictment concerning conduct outside the limitations period of § 3282.

AFFIRMED.

BARKETT, Circuit Judge, specially concurring:

I am in full agreement with the outcome in this case as the government failed to submit <u>any</u> evidence to support the section 3292 tolling order requested here. I write to note only that although the opinion suggests that hearsay, if it bears sufficient indicia of reliability, may satisfy the preponderance of the evidence standard in a given case, that issue must be resolved in the specific context of that given case.