[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12334
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cr-00031-JDW-PRL-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIRSO HERNANDEZ-ASTUDILLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 13, 2019)

Before WILSON, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

Tirso Hernandez-Astudillo appeals his total sentence of 240 months' imprisonment for conspiring to possess, with intent to distribute, 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) & 846 (Count 1), and possessing, with intent to distribute, a mixture and substance containing 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) (Count 6).  Hernandez-Astudillo argues that the district court improperly applied a two-level enhancement to his offense level under the Sentencing Guidelines because the government failed to establish, by a preponderance of the evidence, that the methamphetamine which he possessed was imported from Mexico.

At his trial, one of Hernandez-Astudillo's co-conspirators testified that he and Hernandez-Astudillo were among several "workers" for people in Mexico who were involved in the drug trade.  He further testified about multiple sales of methamphetamine that he made using supplies of the drug from his boss in Mexico, who would have the requested quantity of methamphetamine dropped off at a house shared by Hernandez-Astudillo and Hernandez-Astudillo's cousin. The DEA agent who interviewed Hernandez-Astudillo after his arrest also testified. He recounted that Hernandez-Astudillo admitted to entering the United States illegally from Mexico and confessed that he and his cousin had been selling cocaine and methamphetamine for about two months before their arrest. Hernandez-Astudillo

2

told the agent that he helped his cousin boil methamphetamine powder with mineral water to convert it into crystal methamphetamine.  He also stated that his cousin had told him that the methamphetamine powder came from Mexico. The agent learned in his interview with Hernandez-Astudillo that a co-conspirator visited "regularly from Mexico"—a fact that evidence found on the cousin's phone corroborated.

After the government rested its case, Hernandez-Astudillo testified on his own behalf.  He confirmed that he was working for people in Mexico. When asked whether he told the DEA agent that the methamphetamine powder originally came from Mexico, Hernandez-Astudillo responded, "I don't remember."

After deliberation, the jury found Hernandez-Astudillo guilty of Counts 1 and 6.  At sentencing, he objected to the two-level special offense characteristic enhancement for committing an offense which involved the manufacture of methamphetamine from listed chemicals that the defendant knew were imported unlawfully.  *See* U.S.S.G. § 2D1.1(b)(5).[1]  The government proffered circumstantial evidence in the form of text messages and photos recovered from the cell phones of the conspirators; this evidence showed that the conspirators had

---

[1] "If (A) the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under §3B1.2 (Mitigating Role), increase by 2 levels." U.S.S.G. § 2D1.1(b)(5)

been receiving information about bank accounts in Mexico and sending money there. The district court characterized the issue as "a very close question," but ultimately overruled the objection, finding that "the statement attributed to the Defendant, that his cousin told him [that the methamphetamine powder was imported from Mexico], indicates that the Defendant was aware" of the importation.

"We review a sentencing court's findings of fact for clear error and its application of the guidelines *de novo*." *United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013).  Where a fact pattern gives rise to two reasonable and different constructions, "the factfinder's choice between them cannot be clearly erroneous." *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010) (quoting *United States v. Izquierdo*, 448 F.3d 1269, 1278 (11th Cir. 2006)).  "For a finding to be clearly erroneous, this Court 'must be left with a definite and firm conviction that a mistake has been committed.'"  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quoting *United States v. Rodriguez–Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004)).  "Although review for clear error is deferential, a finding of fact must be supported by substantial evidence."  *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007).

The government bears the burden of establishing the facts necessary to support a sentencing enhancement by a preponderance of the evidence using

4

reliable and sufficient evidence. *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999). "This burden 'requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence.'" *United States v. Almenida*, 686 F.3d 1312, 1315 (11th Cir. 2012) (quoting *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004)).

At sentencing, the district court may consider any relevant information with no regard to whether the information would have been admissible at trial, so long as the information has sufficient indicia of reliability to support its probable accuracy. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). The district court may base its factual findings on undisputed statements in the PSI and on evidence presented at the sentencing hearing. *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).

The Guidelines provide for a two-level upward adjustment where (1) an individual's offense conduct involved the importation of methamphetamine or the manufacture of methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (2) the individual is not subject to a mitigating role adjustment. U.S.S.G. § 2D1.1(b)(5).

Here, the district court's finding that the government had established the factual basis for Hernandez-Astudillo's two-level enhancement by a preponderance of the evidence was supported by: (i) Hernandez-Astudillo's testimony at trial that

5

he worked for people in Mexico; (ii) cell phone text messages showing that a co-conspirator had been communicating with individuals in Mexico; (iii) evidence that a co-conspirator regularly traveled to and from Mexico; (iv) photos on Hernandez-Astudillo's and a co-conspirator's phone showing that they had been sending money to bank accounts in Mexico; and (v) a statement from a Drug Enforcement Administration agent at trial that Hernandez-Astudillo "told [the agent] that his cousin told [him] . . . [the methamphetamine powder] comes from Mexico." Because the facts of this case support the district court's conclusion that it was more probable than not that the methamphetamine was imported from Mexico and that Hernandez-Astudillo knew of the importation, we affirm.

**AFFIRMED.**