[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11592

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

PHILIP GERRY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:08-cr-00198-WMR-RGV-1

_____

Before JORDAN, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Philip Gerry appeals the district court's revocation of his supervised release and sentence upon revocation. Gerry argues that the district court erred in finding that he violated the conditions of his release by failing to participate appropriately in a sex offender treatment program. He also argues that the district court plainly erred in re-imposing the condition that he participate in a treatment program without also expressly limiting his contribution to his ability to pay. After careful review, we affirm.

## I.

Gerry completed a term of incarceration in 2018 and began a 10-year term of supervised release. As a condition of Gerry's supervised release, he was to "participate in the mental health aftercare program including a psychosexual evaluation and counseling if deemed necessary" and "comply with the conditions of the sex offender contract under the guidance and supervision of the U.S. Probation Officer." Doc. 75 at 3.[1] Gerry began sex offender treatment at the Medlin Treatment Center but was terminated for non-compliance. Thereafter, he was treated at the Highland Institute. After Gerry's counselor at the Highland Institute advised Gerry's probation officer that she had terminated his treatment due to

---

[1] "Doc." numbers refer to district court docket entries.

noncompliance, the probation officer petitioned the district court to order Gerry to appear before the court to show cause why his supervised release should not be revoked for failure to cooperate with sex offender treatment.

The district court held a hearing at which Gerry acknowledged that he was terminated from the Highland Institute but denied that he committed the alleged violation. The government in turn offered testimony from Gerry's probation officer and one of his counselors about the nature of Gerry's participation in the mandated sex offender treatment program.

Gerry's probation officer, Shekevia Hawkins, testified that upon his release from prison, Gerry was advised of his responsibilities while on supervised release. As part of that advisement, a probation officer reviewed his sex offender compliance contract, which "itemizes and lists out everything that is expected for sex offenders," including "what's expected in treatment." Doc. 126 at 9. The contract, which was admitted into evidence, stated that Gerry would "attend and actively participate in sex offender evaluation and treatment . . . [and] abide by the rules of the treatment program." Doc. 114-2 at 1. Gerry reviewed and signed the contract.

Gerry initially was placed in a sex offender program at Medlin, a treatment facility with which the probation office had a contract (and, therefore, for which the probation office paid). Four months later, however, Medlin terminated his treatment and he was reassigned to Highland, another facility with which the probation office had a contract. Hawkins testified that Gerry told her he

"hated" the treatment program at Highland, disliked his counselor, and did not want to continue with the program. Doc. 126 at 22. Hawkins advised Gerry that he was obliged to be "respectful with his words and his tone to any of his therapists at Highland." *Id.* She warned him that if he was terminated from Highland, she would initiate revocation proceedings.

The district court asked Gerry's probation officer what "options would . . . be available" to Gerry if—after revocation and upon a new term of supervised release—neither Medlin nor Highland would accept him as a client. *Id.* at 32. She responded: "Plan C would be Mr. Gerry would be tasked with finding his own sex offender program that would be accessible to us and . . . he would have to pay the full cost of it because we don't have a contract with that provider." *Id.* at 32–33. Gerry did not object.

One of Gerry's counselors at Highland, Janai Jones, testified that clients at Highland were advised of the expectations involved in their treatment. Clients were given a treatment handbook, which set out in writing expectations and rules for the treatment process; counselors reviewed the handbook with their clients. One of the rules in the handbook, "Behavior During Treatment Sessions" (the "Behavior Rule"), set forth behavioral obligations for clients. Doc. 114-3 at 7. The rule required that clients "use appropriate language and behaviors to demonstrate respect for" counselors, explaining that "[s]treet talk, cursing[,] or name-calling will not be tolerated." *Id.* Gerry received and signed a copy of the handbook.

Reviewing treatment notes from Gerry's first counselor at Highland, Jones testified that, beginning in his second session, Gerry violated Highland's Behavior Rule. In this session, Gerry "stat[ed] passive aggressively [']I assume you have some knowledge of psychology['] to his therapist." *Id.* at 46. Throughout the sessions that followed, Gerry told his counselor "that Highland was just out to get money," or was a "sham," that "there was no basis" for his counseling. *Id.* at 46–47, 53. He initially refused to complete several assignments despite admonitions from his counselor that the assignments were mandatory. (Later, he completed them.) When his probation officer warned him that his failure to comply could result in revocation of supervised release, "he attempted to blame [his counselor] for his lack of effort . . . even though he had gotten warnings and feedback previously." *Id.* at 63. Nevertheless, he continued to refuse to complete assignments. His counselor at the time terminated the relationship, and Gerry began seeing Jones.

During his first session with Jones, Gerry "was very combative." *Id.* at 67. He "was very angry in that session and angry that he was in treatment again." *Id.* He yelled at Jones and called her "a Nazi." *Id.* Jones asked Gerry to "write about the inappropriateness of that behavior," and instead he wrote about "why he was the victim" and why his behavior during treatment was not inappropriate. *Id.* at 68.

Jones nevertheless continued counseling Gerry. During those sessions, Jones testified, "about 98, 99 percent of the session

was about his inappropriate behavior," rather than actual counseling. *Id.* at 76. Gerry yelled at Jones, once "demand[ing] that [she] shut up." *Id.* When Jones warned Gerry that his behavior could result in his termination from Highland, Gerry blamed Jones. Gerry mocked Jones and, in his last session, told her she was "horrible" at counseling, "lack[ed] empathy," and was "cruel." *Id.* at 77. In response, knowing "that there was going to be no improvement after continuously having the same sessions over and over again," Jones terminated Gerry from Highland. *Id.* at 78. Jones testified that it was Gerry's "disrespectful behavior" that caused his termination, not his failure to meet treatment goals. *Id.* at 110.

The district court found that Gerry had violated the terms of his supervised release because he had deliberately caused his termination from the program with his "attitude and the way [he] spoke to [his] counselors." *Id.* at 133. Specifically, the court found that Gerry had "caused [him]self to be terminated because of [his] offensive behavior and attitude towards [his] counselor and [his] treatment providers and . . . created a condition that was so hostile that it was impractical, at least at the time, for [him] to continue to be treated." *Id.* at 135. Gerry objected to the district court's finding that he had violated the conditions of his supervised release.

The court imposed a 60-day sentence, followed by an 8-year term of supervised release. As to conditions of the new term of supervised release, the court ordered that they be "all of the conditions that were originally assessed." *Id.* at 136. The court expressed its hope that either Medlin or Highland would accept Gerry upon

his release from prison, but noted that if not, Gerry would have "to find a suitable replacement," and that if he couldn't, "the case will be back" in court to find a solution. *Id.* at 137.

This is Gerry's appeal.

## II.

We review the revocation of a defendant's supervised release for an abuse of discretion. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). A district court's findings of fact during a revocation of supervised release hearing "are binding . . . unless clearly erroneous." *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993) (quotation marks omitted). "Where the evidence has two possible interpretations, the district court's choice between them cannot be clearly erroneous." *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998).

Generally, we review a district court's "imposition of special conditions of supervised release for abuse of discretion." *United States v. Carpenter*, 803 F.3d 1224, 1237 (11th Cir. 2015) (internal quotation marks omitted). However, when "a defendant fails to clearly state the grounds for an objection in the district court," we review only for plain error. *Id.* (internal quotation marks omitted). Under the plain error standard, we will reverse a judgment only if "(1) the district court committed a legal error; (2) that error was plain; and (3) it affected the appellant's substantial rights." *United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015). Still, we exercise our discretion to correct the error "only if the error seriously

affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks omitted). "When the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or [us] directly resolving it." *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (internal quotation marks omitted).

## III.

Gerry challenges the district court's finding that he violated the terms of his supervised release. He also challenges, for the first time on appeal, the district court's failure to expressly state on the record that, if he should have to secure sex offender treatment from a facility without a contract with the government, he would only be required to pay based on his ability. We address these claims in turn.

First, we address Gerry's argument that the district court erred in finding that he violated the terms of his supervised release by engaging in such hostile conduct that he caused his termination from Highland. Gerry does not dispute that his alleged hostility caused his termination. He disputes that the record sufficiently demonstrated that he was in fact hostile *to his counselors* rather than to the treatment process. Gerry acknowledges that during his treatment at Highland he conveyed "strongly held views about topics that were the subject of the counseling and about the appropriateness of the counseling itself," but he argues that "[d]espite his disdain for the treatment," he "participated in the treatment and

satisfactorily performed the assignments given to him." Appellant's Br. at 15.

A district court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). The preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004) (internal quotation marks omitted).

As a preliminary matter, Gerry's argument that he performed the assignments given to him is a red herring. He was not terminated for failing to complete assignments. He was terminated for repeatedly violating Highland's Behavior Rule. And the government presented ample evidence that Gerry had shown hostility toward Highland's counselors, rather than merely toward the treatment process. Gerry mocked and demeaned his counselors, repeatedly suggesting that they were inept at their jobs, lacked empathy, or were "cruel." Doc. 126 at 77. He yelled at a counselor, demanded that she "shut up," and called her a Nazi. *Id.* We acknowledge that there may in some instances be a fine line between hostility for a treatment program and hostility for the person implementing the program. But Gerry's conduct falls easily on the hostility-toward-his-counselor side of this line. Indeed, even assuming it were a reasonable construction of this evidence to conclude that Gerry was hostile toward the treatment protocol and not toward his counselors, the district court's finding otherwise was not clearly

erroneous. *See Foster*, 155 F.3d at 1331 ("Where the evidence has two possible interpretations, the district court's choice between them cannot be clearly erroneous.").

Gerry was required by the terms of his supervised release to "comply with the conditions of the sex offender contract." Doc. 75 at 3. That contract, which Gerry signed, required him to "attend and actively participate in sex offender evaluation and treatment at a program approved by my U.S. Probation Officer . . . [and] abide by the rules of the treatment program . . . ." Doc. 114-2 at 1. The rules of his treatment program at Highland required that he "use appropriate language and behaviors to demonstrate respect for" his counselors and prohibited "[s]treet talk, cursing[,] or name-calling." Doc. 114-3 at 7. Gerry violated this rule. Because he failed to "abide by the rules of the treatment program" at Highland, Doc. 114-2 at 1, he violated the terms of his sex offender contract. And because he failed to "comply with the conditions of the sex offender contract," Doc. 75 at 3, he violated the terms of his supervised release. We affirm in this respect.

Second, we address Gerry's argument that the district court erred in, he says, "implicitly requiring [him] to pay for the cost of sex offender counseling and treatment." Appellant's Br. at 16 (capitalizations omitted). Gerry notes that the government stated at his revocation hearing that he would be responsible for paying for sex offender treatment if neither Medlin nor Highland would accept him as a client. And he notes that the district court explained that if neither Medlin nor Highland would take him, he would need to

find another place to receive treatment. From these two facts, Gerry posits that the district court implicitly required him to pay the cost of sex offender treatment if that treatment did not occur at Medlin or Highland. Gerry argues that such a condition violates principles of equal protection. Because Gerry raises this challenge for the first time on appeal, we review it only for plain error. *Carpenter*, 803 F.3d at 1237.

The record does not support Gerry's assertion that the district court impliedly ordered that he pay for a substitute sex offender treatment provider. Rather, the court expressed its hope that either Medlin or Highland would readmit him. And, the court stated, *if* neither would do so, *and if* Gerry could not find a suitable replacement, then "the case [would] be back" in court to resolve the matter. Doc. 126 at 137. In other words, the district court expressly reserved any ruling on what to do under those circumstances; it did not impliedly rule that Gerry would be obligated to pay for sex offender treatment if he could not receive treatment at Medlin or Highland.[2]

---

[2] The terms of Gerry's supervised release did, as explained above, require him to abide by the sex offender contract. That contract provided that Gerry would "be financially responsible for all evaluations and treatment unless other arrangements have been made by [the] U.S. Probation Officer or treatment provider." Doc. 114-2 at 1. Gerry does not say whether he is still bound by this initial contract, or whether another one—perhaps one with different language—has been executed. Nor does he challenge this term in his contract or otherwise argue that he did not voluntarily accept the obligation when he

At this juncture, Gerry has not represented that both Medlin and Highland would refuse to accept him as a client. He has not represented that he is or would be unable to find a replacement that was suitable to him and to the government. Even if we could read the record to indicate that the district court might order him to pay for treatment if both "ifs" came to fruition, "it would be pure speculation to assume such facts now simply because they might conceivably come to exist at some future time." *United States v. Zinn*, 321 F.3d 1084, 1091 (11th Cir. 2003). Thus, the issue is not ripe for our review, and we affirm the conditions the district court imposed. *Id.* at 1088–92.

**AFFIRMED**.

---

signed the contract. And he has not asserted that the payment obligation in the sex offender treatment contract is part of the conditions of his supervised release so as to challenge the two in tandem. Thus, we need not address the merits of any challenge to the payment obligation in Gerry's initial sex of-fender treatment contract. And even if we did, in the absence of controlling precedent on the issue, we would find no plain error. *See Castro*, 455 F.3d at 1253.