[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12046

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ALPHONSO BATTLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:15-cr-00122-ECM-JTA-1

_____

Before ROSENBAUM, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

Alphonso Battle appeals the district court's revocation of his supervised release. On appeal, Battle argues that there was not a preponderance of the evidence supporting the finding that he violated the conditions of his release. After careful review, we affirm.

We review a district court's decision to revoke a defendant's term of supervised release for abuse of discretion. *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010). We review a district court's factual findings for clear error. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993). A finding of fact is clearly erroneous if we are left with a definite and firm conviction that the district court has made a mistake. *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).

We afford considerable deference to a district court's credibility determinations because it "observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). "We must accept the evidence credited by the district court unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Shabazz*, 887 F.3d 1204, 1215 (11th Cir. 2018) (quotations omitted). When a defendant testifies in a criminal case, the fact-finder may make adverse credibility determinations or

wholly reject his explanation. *United States v. Vazquez*, 53 F.3d 1216, 1225 (11th Cir. 1995).

A district court may revoke a defendant's term of supervised release if it finds, by a preponderance of the evidence, that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3); *Cunningham*, 607 F.3d at 1266. This standard "requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004) (quotations omitted); *see also United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (*en banc*) ("A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it." (quotations omitted)).

The mandatory conditions of supervised release require that a defendant shall not commit a federal, state, or local crime during his supervision. 18 U.S.C. § 3583(d). A district court must revoke supervised release if it finds a Grade A violation. U.S.S.G. § 7B1.3(a)(1). Grade A violations include federal, state, or local offenses punishable by a term of imprisonment exceeding one year and are crimes of violence. *Id.* § 7B1.1(a)(1). Under Alabama law, a person commits domestic violence strangulation, a Class B felony, if he "commits an assault with intent to cause physical harm . . . by strangulation" or attempted strangulation and the victim is his child. Ala. Code § 13A-6-138(b). In Alabama, a Class B felony is punishable by not more than 20 years but at least 2 years of imprisonment. *Id.* § 13A-5-6.

Here, the district court did not abuse its discretion by revoking Battle's supervised release based on the finding that he violated the conditions of his release by strangling his minor daughter in violation of Ala. Code § 13A-6-138.  According to the testimony of Battle's daughter, P.B., the offense occurred when she got into an argument with her father while she was driving him in a car.  During the argument, Battle choked her, "put[ting] both of his hands around [her] neck and pushed [her] in between the door -- in between the seat, like the top of the seat, and the window."  Photos taken after the incident showed that P.B. had a "friction burn" on her neck, and P.B. testified at the hearing that she did not have the burn on her neck before Battle choked her.  She also described what happened after he choked her, noting that Battle broke her iPad, threatened to whip her, pulled her out of the car, and threw her belongings on the grass.  Based on this testimony, the district court found that it was more probable than not that Battle violated his supervision by committing domestic violence strangulation.  *Trainor*, 376 F.3d at 1331; Ala. Code § 13A-6-138(b); 18 U.S.C. § 3583(d).

We cannot say that the district court clearly erred in finding that Battle committed a state crime by choking his daughter.  In reaching its decision, the district court noted several times that P.B.'s testimony was "very credible," especially compared to Battle's testimony, and we defer to the district court's credibility determinations.  *See Ramirez-Chilel*, 289 F.3d at 749.  To the extent Battle argues that we should not defer to the district court's credibility determinations, his argument is unpersuasive. Battle has not shown that P.B.'s version of events was unbelievable or impossible.

*Shabazz*, 887 F.3d at 1215.  Battle argues that P.B. was angry with him and that she lied about accessing her Facebook account -- but these facts do not make her story against the laws of nature.  *Id.* This is especially true since the other evidence corroborated her story.  For instance, security footage and body-worn camera footage -- from an officer who arrived after the altercation -- showed that P.B.'s story was consistent at the scene and the hearing.  Although neither footage shows Battle choking P.B., the body-cam footage reflects that P.B. immediately told the officer that her dad "choked her out while she was still in the car," she can be heard on the phone with her mom saying, "He choked me out," and she described the choking to the officer.  Likewise, the security footage mirrors her story after he choked her, showing Battle breaking the iPad, grabbing her from the car, touching his belt, and throwing the iPad at P.B.

The evidence also included a photograph depicting an injury on P.B.'s neck, and P.B.'s hearing testimony matched her written police statement.  Battle claims that P.B.'s injury was caused when she tried to leave the car with her seat belt on, but P.B. denied this claim at the hearing.  As we've said, we defer to the district court's credibility determinations.  *See Ramirez-Chilel*, 289 F.3d at 749.

As for Battle's testimony that he did not choke, strangle, or touch P.B.'s neck, the district court found that he was not credible for several reasons.  These included that: (1) Battle had reason to refute P.B.'s story; (2) his story that they were stopped at a red light when the incident happened was refuted by the video footage

showing that the car was not stopped at a red light; (3) his demeanor while testifying did not support his testimony; and (4) the other evidence corroborated P.B.'s story.  Battle argues that the video footage did not really refute his testimony because the car was stopped *near* traffic lights, but it is irrelevant.  Under our case law, the district court can make adverse-credibility findings when a defendant testifies.  *Vazquez*, 53 F.3d at 1225.  And, again, we defer to those determinations.  *Ramirez-Chilel*, 289 F.3d at 749.

In short, based on the evidence presented, combined with the district court's credibility determinations, a preponderance of the evidence supports the finding that Battle violated the conditions of his release, and the district court did not clearly err in finding that Battle committed a state crime.  *Trainor*, 376 F.3d at 1331; *Watkins*, 10 F.4th at 1184; *Almand*, 992 F.2d at 318.  Thus, it did not abuse its discretion by revoking his supervised release, and we affirm. *Cunningham*, 607 F.3d at 1266.

**AFFIRMED.**