580 So.2d 287 (1991)
Richard M. PICKOVER, Appellant,
v.
STATE of Florida, Appellee.
No. 90-0089.
District Court of Appeal of Florida, Fourth District.
May 22, 1991.
Guy Seligman, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
DELL, Judge.
Richard M. Pickover appeals his convictions and sentences for trafficking in cocaine and conspiracy to traffic in cocaine. He argues, among other things, that the *288 trial court erred when it denied his motion for judgment of acquittal because the state failed to produce sufficient evidence to prove the charges asserted against him. We agree, find this issue dispositive and reverse.
As a result of a three-day undercover operation the Hollywood Police Department, assisted by a confidential informant, arranged to purchase two kilos of cocaine from Sherri Register ("Register"). Arrangements were made for the transaction to take place at Register's home at 10:00 A.M. on December 8, 1988. Shortly before 10:00 A.M., appellant arrived at the Register home. He parked his van in the driveway, left its doors open revealing the presence of tools, and entered the home carrying a large toolbox. He testified that approximately ten days earlier he had scheduled an appointment for that date to repair the sink in the Register home. Appellant also testified that he began working on the sink and found that the garbage disposal was clogged. He removed the disposal, made the necessary repairs and replaced it. He discovered that the wiring to the garbage disposal needed repair and while repairing it heard loud noises and screams from the other part of the house. As he attempted to remove himself from underneath the sink, police officers entered the room, placed a gun at his head and arrested him.
The state relies on the testimony of a police officer who stated that shortly before 10:00 A.M. he had contacted Register to confirm the drug transaction and that she informed him that the drugs were not there but would arrive within a short time. When the officer arrived at 10:00 A.M. he saw appellant's van and noticed the tools inside. When he entered the home, the officer heard the noise of dishes being moved about in another room. The officer testified that the following events then took place:
A. Like I said I was asking  Sherri was inquiring about the money and I was inquiring about the cocaine. So like I say I was more pushy, I got to see the cocaine first.
Q. What did she do?
A. She went into the kitchen area and there were whispers and then she came out, and as she came out right by the kitchen door in between the I guess it's the living room and dining area there is table or a wall, like a half wall, half table, she picked up a plastic bag off of that table, walked over to where I was standing and dropped it on the chair. There was a chair in the middle of the room that I was standing by. She dropped it in the chair. As I went to open up the bag she said something to me like, no prints, don't touch it, no prints.
Q. What did you do or what did you say?
A. I said, oh, I would like to look inside, I would like to make sure there is more in there than just tape. Can't I just peel back a little bit of tape?
Q. And did she tell you that you can do that at that particular time?
A. No.
Q. What did she do?
A. She walked around the kitchen area again, she didn't go into the kitchen, she only took a few steps away and she said he wants to look at it, something to the effect he wants to take a look at it.
Q. And were you able to hear what the other person in the kitchen says?
A. The person in the kitchen, it sounded to me like 
MR. TURNER: Objection, Your Honor, sounded to me like.
THE COURT: Overruled.
THE WITNESS:  It's okay. BY [THE PROSECUTOR]:
Q. Was it a male voice or female voice in the kitchen that said it's okay?
A. It was a deeper voice. If I gave it much thought I probably would have said it was a male.
Q. And after the male voice states it's okay, what does the Defendant Register do?
A. She takes a couple of steps back over to me and she says knock yourself out or knock your socks off, I think was knock yourself out. I opened up the bag *289 and I peeled back the tape and looked to see inside that it was cocaine.
(emphasis added). After a prearranged signal, officers entered the house, found appellant on the kitchen floor surrounded by tools, and arrested him. Neither the investigating officers nor the confidential informant had ever heard of or met appellant prior to his arrest.
Appellant argues that the state has failed to present any direct evidence connecting him with the drug transaction and that the state relied upon a "pyramiding" of inferences in order to establish its case. The state argues that the undercover officer's testimony, that a voice from the kitchen responded to Register's statement with words to the effect that "It's okay," or "No problem," constituted direct evidence of appellant's involvement in the drug transaction. The state also relies on inferences that may be drawn from the following circumstantial evidence: during the undercover operation, Register made a telephone call, out of the presence of the officers, to an unidentified number alleged by the state to be appellant's beeper; appellant arrived at the house shortly after the undercover agent's telephone conversation with Register wherein she stated the drugs had not arrived but would arrive shortly; and appellant's presence on the premises when the drug transaction took place. The record shows that the police failed to determine whether Register called appellant's beeper. Further, the above quoted testimony contradicts the state's assertion that Register brought the cocaine out from the kitchen. We also note Register's testimony that allegedly during the night before the transaction the confidential informant came to Register's home and left a package, later revealed to contain cocaine.
It is well settled that trafficking in cocaine requires evidence that the accused had knowledge of the nature of the substance. See Way v. State, 475 So.2d 239 (Fla. 1985); Pennington v. State, 526 So.2d 87 (Fla. 4th DCA 1987), approved, 534 So.2d 393 (Fla. 1988). Further, conspiracy to traffic, under section 893.135(5), Florida Statutes (1989), requires a showing of both an agreement and the intention to commit an offense. See King v. State, 104 So.2d 730 (Fla. 1957); Voto v. State, 509 So.2d 1291 (Fla. 4th DCA 1987); Manner v. State, 387 So.2d 1014 (Fla. 4th DCA 1980); see also Lopez v. State, 535 So.2d 666 (Fla. 4th DCA 1988). The only evidence purporting to supply these essential elements is the alleged ambiguous conversation between Register and an unidentified, but probably male, voice emanating from the kitchen. This court has previously held that presence at the scene of a drug transaction alone will not supply the requisite elements to sustain trafficking and conspiracy convictions.
In Pennington, supra, an undercover narcotics investigation resulted in the defendant's arrest. The undercover officer's only contact with the defendant came on the day of the drug transaction which took place in a grocery store parking lot. The officer testified that a Dodge automobile arrived twice with codefendant Voto as a passenger. Both times Voto exited the vehicle to speak with Steffey, another codefendant and the one who organized the drug deal. The officer could not see to identify the driver of the Dodge. When the Dodge arrived for the third time, Pennington got out, approached the officer and said, in reference to a nearby Buick, "It's in the white car over there." The Buick contained narcotics and resulted in Pennington's arrest and conviction for trafficking in cocaine and conspiracy to traffic in cocaine. Pennington argued his innocence contending that he had been asked to assist in a jewelry transaction and had been present for security purposes. This court held:
Viewed most favorably to the state, the evidence presented during its case shows only that appellant was present at the scene of the drug transaction and that appellant said, "It's in the white car over there." The state did not present sufficient evidence to prove that appellant knowingly participated in the delivery of a controlled substance. The state also failed to present any evidence from which the jury could reasonably have concluded that appellant participated in a *290 conspiracy to deliver the cocaine. In Way v. State, 475 So.2d 239 (Fla. 1985), the supreme court stated:
We agree that knowledge of the nature of the substance possessed is an essential element to the crime of trafficking in cocaine under section 893.135(1)(b)1. The statute requires "knowing" possession of cocaine and, therefore, lack of knowledge that the substance is cocaine would be a defense.

Id. at 240-41.
Id. at 88. In the related case of Voto v. State, 509 So.2d 1291 (Fla. 4th DCA 1987), this court found that the evidence of Voto's participation supported his conviction for aiding and abetting while it did not support his conviction for conspiracy. Here, as in the above cited cases, there is no direct evidence linking appellant to the drug transaction.
In State v. Law, 559 So.2d 187 (Fla. 1989), the supreme court expressed the standard of review governing motions for judgment of acquittal in cases based solely on circumstantial evidence. The court stated:
Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. McArthur v. State, 351 So.2d 972 (Fla. 1977); Mayo v. State, 71 So.2d 899 (Fla. 1954).
... .
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. See Toole v. State, 472 So.2d 1174, 1176 (Fla. 1985).
Id. at 188-189 (quoting State v. Allen, 335 So.2d 823, 826 (Fla. 1976) (emphasis in original; footnote omitted)).
We reject the state's contention that the subject conversation in this case constituted sufficient direct evidence to preclude the application of the standard enunciated in State v. Law. We hold that the conversation constitutes circumstantial evidence that, even when viewed in light most favorable to the state, fails to incriminate appellant in the drug transaction. The other evidence offered not only fails to contradict appellant's claim of innocence, but in fact corroborates it. Appellant testified that he was in Register's home to repair the kitchen sink. Register testified that she had made the appointment over a week earlier, but had forgotten until appellant arrived just prior to the scheduled drug transaction. She also testified that she feared harm from the men purchasing the cocaine and thought that having another person in the house might persuade the men to leave her alone. The record reflects that appellant's van was filled with tools and that when arrested he was on the floor, near the sink, surrounded by his plumbing tools. Finally, Register's mother testified that the sink had been clogged prior to the arrest, but worked fine afterwards.
Here, the state failed to present sufficient competent evidence to overcome appellant's hypothesis of innocence. See State v. Law, supra. The evidence also failed to prove that appellant had any knowledge of the transaction or had been involved in a conspiracy to effectuate the sale. Accordingly, we reverse appellant's convictions and sentences for trafficking in cocaine and conspiracy to traffic in cocaine and remand this cause to the trial court with instructions to enter a judgment of acquittal in favor of appellant.
REVERSED and REMANDED.
ANSTEAD and STONE, JJ., concur.