583 So.2d 1111 (1991)
Carl ROUSE, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1606.
District Court of Appeal of Florida, Fourth District.
August 7, 1991.
*1112 Richard L. Jorandby, Public Defender, and Paul E. Petillo, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jiminez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
We affirm appellant's convictions for trafficking in cocaine and conspiracy to traffic in cocaine finding that the trial court did not err in denying the appellant's motion for judgment of acquittal.
Detective Losey of the Fort Lauderdale Police Department was introduced by a confidential informant to one Charles Mills. He attempted to negotiate a cocaine transaction with Mills. On August 15, 1988, Losey contacted Mills to arrange a one kilo buy. The next day, Mills contacted Losey on his beeper to tell him that he could arrange the sale for $22,000. They arranged to meet at Mills' auto shop. Losey arrived at the shop and found both Mills and appellant there. The three talked together, and Mills told Losey that the supplier had been there earlier but had left. Mills noted that the supplier worked for the City of Sunrise. Losey pretended to be afraid of the situation, and Mills and appellant both assured him that there was nothing to worry about. Losey testified that appellant assured him that the supplier was legitimate. When Losey continued to complain that the supplier had not yet arrived, appellant removed a yellow piece of paper from his wallet and dialed a phone number. Appellant hung up the phone. When it rang again, appellant picked it up. Losey then asked appellant how long it would take for the supplier to arrive, and appellant responded that it would be another five minutes. Losey then heard appellant say "Boy get over here. This guy's been waiting for you." Losey then decided to leave and asked to be beeped if the cocaine arrived.
After meeting with surveillance team, Losey called back to Mills and told him that it was too late to complete the transaction that day. Mills apologized and told Losey he would call when he had the kilo in his hands. Mills called the next day, but Losey was not able to conclude the transaction that day but that Mills should try the following day.
On the following day, August 18, 1988, Mills again beeped Losey and told him that the supplier would be able to deliver the kilo on that day. After several calls, Losey arrived at Mills' garage where Mills and Perkins (the supplier) were in the office. Perkins instructed Mills to get "that thing" out of his car. While Mills was obtaining the cocaine, Perkins apologized to Losey for not being able to complete the transaction earlier.
A short time later, Mills returned with the cocaine. Losey opened the package, tested it, and then told him he would bring in the money. At that point, Losey sent in the arrest team. After Perkins and Mills were arrested, the surveillance detectives walked in from the rear of the shop with appellant in custody. Losey removed from appellant's wallet a yellow piece of paper which appeared similar to the one Losey had seen appellant use to make the call on August 16th. Losey dialed the number written on the paper which triggered Perkins' beeper.
We think the evidence is sufficient to allow this case to go to the jury on the theory that appellant aided and abetted trafficking in cocaine. In order to be convicted as an aider and abettor, the state must show that the defendant: (1) assisted the actual perpetrator by doing or saying something that causes, encourages or assists or incites the perpetrator to actually commit the crime; and (2) intended to participate in the crime. Howard v. State, 473 So.2d 841 (Fla. 1st DCA 1985). The record demonstrates that the state made the requisite showings at trial. Appellant, believing *1113 Losey to be a legitimate potential purchaser, encouraged or incited Losey to go through with the transaction by assuring him that the supplier was indeed legitimate. When Losey voiced his uneasiness because the cocaine had not yet arrived, appellant assisted the other traffickers by telephoning Perkins to tell him to hurry back to the garage before Losey tired of waiting and left. Appellant, however, argues that all of this conduct occurred on August 16th and not on August 18th, the date of the offense with which appellant was charged. However, as the state notes, it is abundantly clear from the record that the sale was to transpire on August 16th and was merely postponed until the 18th because Losey declined to conclude it earlier. Thus, appellant's conduct on the 16th was adequate to establish that he intentionally participated as an aider and abettor to the conclusion of the sale on the 18th.
Based on the same evidence we also find that it was sufficient to withstand the motion for judgment of acquittal on the conspiracy to traffic charge. We quote with approval from Pino v. State, 573 So.2d 151, 152 (Fla. 3d DCA 1991):
Where, as here, the defendants are involved in a series of meetings, arrangements, and negotiations to sell or buy illegal drugs from an undercover police officer which eventually leads to such a sale or purchase, Florida courts have generally sustained convictions for conspiracy to commit the offense of drug trafficking based on this conduct. See, e.g., Gonzalez [v. State, 571 So.2d 1346 (Fla. 3d DCA 1990)]; Herrera [v. State, 532 So.2d 54 (Fla. 3d DCA 1988)]; Munroe v. State, 514 So.2d 397 (Fla. 1st DCA 1987), rev. denied, 519 So.2d 987 (Fla. 1988); Brown v. State, 468 So.2d 325 (Fla. 2d DCA 1985), rev. denied, 476 So.2d 672 (Fla. 1985). Only where, unlike this case, the defendant's involvement in the enterprise appears to be minimal at best, evincing no prearrangement with the other defendants, see Pennington v. State, 526 So.2d 87 (Fla. 4th DCA 1987), approved, 534 So.2d 393 (Fla. 1988); Voto v. State, 509 So.2d 1291 (Fla. 4th DCA 1987), or where, unlike this case, the defendant has been acquitted of an accompanying drug trafficking charge, thereby discrediting much, if not all of the evidence against the defendant, see e.g., Jimenez v. State, 535 So.2d 343 (Fla. 2d DCA 1988); Ashenoff v. State, 391 So.2d 289 (Fla. 3d DCA 1980), have Florida courts been inclined to reverse such conspiracy convictions... .
We find in the evidence more than a minimal involvement on the part of appellant[1]. While he was not involved in the negotiation of price, he was central in assuring Losey of the legitimacy of the supplier. Further, it was appellant who called the supplier on August 16th, and when he was arrested on the 18th at the site of the transaction, he had in his possession the supplier's beeper number. We think all of this provides circumstantial evidence of a prearrangement with the other defendants sufficient to withstand the motion for judgment of acquittal. The evidence presented is simply inconsistent with the view that appellant just happened to be present on the 18th at the shop where the transaction was completed. Where circumstantial evidence is relied upon, the question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and there should be no reversal where there is substantial competent evidence to support the jury's verdict. State v. Law, 559 So.2d 187, 188 (Fla. 1989).
We find no error in the remaining point raised and therefore affirm.
GLICKSTEIN, C.J., and GARRETT, J., concur.
NOTES
[1] We would further distinguish Voto v. State, 509 So.2d 1291 (Fla. 4th DCA 1987), where the actual participation of Voto as a lookout appears greater than the conduct of appellant here. However, the police had no statements by Voto regarding his participation in the transaction, whereas in the instant case Losey testified as to the assurances by appellant regarding the drug transaction as well as appellant's telephone conversation with the supplier.