DAMOORGIAN, J.
Gregory Schlicher timely appeals his judgment of conviction and sentence on drug-related charges. Schlicher argues that the trial court reversibly erred by denying his motion to dismiss pursuant to Florida Rule of Criminal Procedure 3.190(c), motion for judgment of acquittal, and motion to sever. We find merit to Schlicher’s claim that the trial court reversibly erred by denying his motion for judgment of acquittal on Counts 1-3 and ■5-8, and reverse his convictions and sentences on those counts. We affirm Schlicher’s conviction and sentence on Count 4 without discussion.
This case arises from a lengthy drug investigation by the Martin County Sheriffs Office. During the investigation, the police discovered Schlicher’s involvement in a drug ring. Ultimately, Schlicher was arrested and charged with six counts of Conspiracy to Purchase Cocaine (Counts 1-3 and 6-8), one count of Soliciting the Sale or Delivery of Cocaine (Counts 4) and one count of Soliciting the Purchase of Cocaine (Count 5). The eight counts related to eight separate dates during the months of December 2006 and January 2007 on which drug transactions allegedly took place.
After his arrest, Schlicher filed a motion to dismiss the information pursuant to Florida "Rule of Criminal Procedure 3.190(c), arguing that the charges in the information were vague and indistinct. The motion to dismiss was followed by a motion to sever the eight charges on the grounds that Schlicher would be prejudiced by a single trial on all eight charges. The trial court heard and denied both of these motions.
During the trial, the State presented a number of police witnesses who testified that the police were conducting an investigation, primarily through wiretaps, of a *517 cocaine trafficking organization headed by Jose Tzoc-Caxaj (Jose). Schlicher was not the target of the investigation, but came to be known to police when he purchased cocaine from Jose. Schlicher admitted to police that he had purchased cocaine consistently from Jose for his own use, but maintained that he was not a drug dealer. The State also introduced recordings of the wiretapped conversations between Jose and Schlicher. These conversations are, in large part, the basis of the charges against Schlicher.
At the close of the State’s evidence, Schlicher moved for a judgment of acquittal. After the jury returned a guilty verdict on the charges, Schlicher moved for a new trial arguing that the verdict was contrary to the weight of the evidence. The trial court denied these motions.
Schlicher now appeals the denial of his motion for judgment of acquittal. “In reviewing a motion for judgment of acquittal, a de novo standard of review applies.” Pagan v. State, 830 So.2d 792, 803 (Fla.2002). If there is competent, substantial evidence of each element of the charged crime, the denial of a motion for judgment of acquittal will be affirmed. Johnson v. State, 969 So.2d 938, 955 (Fla. 2007).
First, Schlicher incorrectly contends that the State’s case against him was purely a circumstantial evidence case, which requires a more stringent standard of review. See State v. Law, 559 So.2d 187, 188 (Fla.1989) (“Where the only proof of guilt is circumstantial ... a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.”). At trial, the State introduced recorded conversations allegedly between Jose and Schlicher. The recorded conversations are direct evidence, not circumstantial evidence. Moreover, Schlicher’s argument that the State could not prove that one of the voices belonged to him goes to the sufficiency of the evidence, not whether it was circumstantial. Thus, the heightened standard does not apply. See Pagan, 830 So.2d at 803.
Schlicher next argues that the State failed to prove that he committed the crime of conspiracy to purchase cocaine, for which he was charged in Counts 1-3 and 6-8 of the information. A conspiracy exists where there is an express or implied agreement between two or more persons to commit a criminal offense, and an intention to commit the offense. Leigh v. State, 967 So.2d 1102, 1104 (Fla. 4th DCA 2007); Pino v. State, 573 So.2d 151, 152 (Fla. 3d DCA 1991). The agreement may be inferred from the circumstances; direct proof is not necessary. Leigh, 967 So.2d at 1104; Pino, 573 So.2d at 152. Florida courts have generally affirmed convictions for conspiracies to buy or sell drugs where the “defendants are involved in a series of meetings, arrangements and negotiations to sell or buy illegal drugs that lead to such sale or purchase.” Leigh, 967 So.2d at 1104 (citing Pino, 573 So.2d at 152).
 Logic demands that the agreement that constitutes the conspiracy must be an agreement to commit the same criminal offense. Cf. Green v. State, 999 So.2d 1098, 1098 (Fla. 5th DCA 2009) (where the court affirmed the defendant’s conviction for conspiracy to purchase cocaine because the co-conspirators had a common purpose to commit the crime of purchase of cocaine). In a buy-sell transaction, that agreement usually does not exist because the buyer and seller each intend to commit a different criminal offense. As a result, there is no criminal conspiracy to pursue a common goal. Such is the case here, where Schlicher and Jose were on opposite *518 sides of the drug transactions.[1] Accordingly, there was no evidence of an express or implied agreement between Schlicher and Jose to commit the common criminal offense of purchase of cocaine.
The State relies on Leigh to support its argument that Schlicher’s conspiracy convictions should be upheld. This case, however, is factually distinguishable from the present case. In Leigh, two or more defendants were engaged in the sale or purchase of drugs from a third party. Leigh, 967 So.2d at 1103-04; see also Pino, 573 So.2d at 152. The defendants were convicted based on their conspiracies with co-defendants who were on the same side of the transactions. Leigh, 967 So.2d at 1105; see also Pino, 573 So.2d at 152. This Court reasoned that, in order to carry out either the joint purchase or the joint sale of drugs, there must have been a prior agreement among the defendants to achieve that sale, or else the sale would not have occurred. Leigh, 967 So.2d at 1105 (citing Pino, 573 So.2d at 152). Here, there was no such agreement between Schlicher and a co-conspirator on the same side of the transaction.
The First District Court of Appeal has expanded the notion of a conspiracy to purchase drugs, although it is not clear how far. In Pallin v. State, 965 So.2d 1226 (Fla. 1st DCA 2007), the court upheld a conviction for conspiracy to purchase cocaine where the defendant knew that his suppliers were engaged in an ongoing agreement between themselves to purchase cocaine and then to supply the defendant with cocaine. Id. at 1227. “This relationship necessarily required [the defendant’s] suppliers to purchase and possess cocaine so that he could then purchase or possess a smaller portion of the cocaine.” Id. The court determined that this was sufficient to prove that the defendant and his suppliers shared a common objective to purchase or possess cocaine with the intent to purchase. Id. The court reasoned that the defendant could not purchase cocaine from his suppliers unless his suppliers purchased that cocaine from someone else. Id. The court agreed with the view of the United States Court of Appeals for the Eighth Circuit that “ ‘evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of conspiracy to distribute.’ ” Id. at 1228 (citing United States v. Miller, 91 F.3d 1160, 1162 (8th Cir.1996) (quoting United States v. Eneff, 79 F.3d 104, 105 (8th Cir.1996))). The court then held that the evidence that the seller had sold resale quantity cocaine to the buyer on multiple occasions was sufficient to sustain the conviction for conspiracy to purchase cocaine. Id.
In plain language, the First District has created a rule of law that a repeat buyer and repeat seller almost always have an implicit agreement that the seller will continue to purchase drugs from his supplier so that he can continue to sell drugs to the buyer. This is a broad expansion of conspiracy, and we are unable to find any other Florida court that has applied the reasoning from Pallin. We do not have to decide whether to accept the reasoning from Pallin, however, because the State did not produce any evidence that Schlicher knew that Jose was engaged in an ongoing relationship with a supplier to *519 purchase cocaine so that he could sell the cocaine to Schlicher. Moreover, the State never argued such a theory during the trial.
A detailed description of each recorded conversation between Schlicher and Jose that was introduced at trial and the undercover officers’ observations about those conversations would unduly burden this opinion. However, suffice it to say that viewing the evidence in the light most favorable to the State, we hold that the State did not produce sufficient evidence that Schlicher and Jose had an express or implied agreement to purchase cocaine, and that both shared the common intent to purchase cocaine. Rather, the State’s evidence established that the alleged co-conspirators had different criminal intents. Accordingly, the trial court erred in denying Schlicher’s motion for a judgment of acquittal on Counts 1-3 and 6-8, the conspiracy charges.
We also reverse Schlicher’s conviction and sentence on Count 5, in which he was charged with soliciting the purchase of cocaine on December 22, 2006. At trial, the State played a recorded conversation between Schlicher and Jose that took place on December 22, 2006. Schlicher called Jose several times and Jose did not answer his phone. When Schlicher finally reached Jose, they agreed to meet up around 1:00 p.m. At 4:16 p.m., Schlicher called Jose back and asked him “[wjhat’s the chances of you giving me some work until after— until Monday so that we don’t run out over this big weekend?” Jose responded, “[y]ou know I can’t do that bro.” A few hours later, Schlicher called Jose again and asked if Jose could “hook up eight ball powder” for him.' Jose said “no” and Schlicher replied “Okay. I had to try. Thank you.” A detective from the Martin County Sheriffs Office identified the voices in the recordings as those of Schlicher and Jose. He also testified that “work” was a code word meaning either the sale of cocaine or the cocaine itself, and that an “eight ball powder” is an eighth of an ounce of cocaine powder.
Viewing this evidence in the light most favorable to the State, there was no competent, substantial evidence that Schlicher solicited Jose to purchase cocaine. The trial court instructed the jury that, in order to prove solicitation of the purchase of cocaine, the State had to prove two elements beyond a reasonable doubt: (1) that Schlicher solicited another person or persons to commit the purchase of cocaine; and (2) that, during the solicitation, Schlicher commanded, encouraged, hired or requested another person or persons to engage in specific conduct which would constitute the commission of the purchase of cocaine or attempt to commit the purchase of cocaine. The State did produce evidence that Schlicher solicited the sale of cocaine, but this was not the crime with which Schlicher was charged in Count 5.

Affirmed in part; Reversed in part.

WARNER and STEVENSON, JJ., concur.

. We had to infer the identity of Schlicher’s co-conspirator because, with the exception of Count 8, the State did not identify the co-conspirator in the information or during the trial. A review of the information charging both Schlicher and Jose reveals that, on the same dales and presumably for the same transactions, Schlicher was charged with conspiracy to purchase cocaine while Jose was charged with conspiring with Schlicher to sell cocaine.