LEVINE, J.
The issue presented on appeal is whether there was evidence of appellant’s partic *1211 ipation in any prior activity regarding a drug transaction sufficient to establish an agreement to traffic in oxycodone. We find, since there was insufficient evidence of appellant’s involvement in any pre-transaction discussions, conversations, or meetings with the co-defendant, that appellant’s conviction and sentence for conspiracy to traffic in oxycodone should be reversed.
Edward McCabe, an undercover officer from the Delray Beach Police Department, contacted David Levine for fifty additional oxycodone pills after initially purchasing sixteen pills. Levine told McCabe to come to Levine’s apartment. McCabe went to the apartment with $700 in marked currency. Levine introduced McCabe to Sarah Billett, who also resided at Levine’s apartment. Billet informed McCabe that “my guy’s here” and asked McCabe for the money. McCabe gave the money to Levine, who counted it and gave the money to Billett. Billett then walked to the parking lot with the currency. Billett approached a black Chevrolet Impala, which was registered to appellant, and “engaged in a brief conversation.”
Junior Julien was driving the Impala. Julien exited the vehicle and met with Billett “face to face” by one of the buildings. A passenger from the Impala, Lincoln Jackson, left the vehicle and looked “up and down” the roadway. Delray Beach police officers observed Billett counting out money and handing it to Ju-lien, who in turn, handed pills to Billett. Julien and Jackson returned to the Impala. During the transaction, the officers noticed another person in the back seat of the car, who turned out to be appellant. After the Impala drove away, Billett returned and gave forty-six oxycodone pills to McCabe. McCabe then left the residence. Meanwhile the Impala left the apartment complex and stopped about a block away. There, the driver, Julien, got out and drove away in a parked Ford Explorer. Appellant moved to the front seat and then drove the Impala to a nearby gas station, where officers approached appellant.
The officers observed appellant making a “downward push motion ... and trying to push something down to conceal it” in her purse that she was holding. After instructing appellant to give her purse to them, the officers found $400 which matched the investigative funds originally given to McCabe. The officers also found in appellant’s purse a bottle of pills prescribed by a doctor with appellant’s name on it. The pill bottle contained fifty-four pills, which tested positive for oxycodone. A forensic scientist could not determine whether the fifty-four pills came from the same batch as the forty-six pills given to McCabe. Appellant told the police officers that the $400 found in her purse was her rent money. Appellant was arrested and charged with trafficking in oxycodone and conspiracy to traffic in oxycodone.
At trial, appellant’s interview with the police was played for the jury. Appellant told the police that she was prescribed 240 pills per month by a physician for back pain and that she had a bigger bottle of pills at home. Appellant told the police that she called her boyfriend and asked him for some money. He said he did not have any but that she should go see his friend in order to get some money. According to appellant, that is why she went to see Julien. Appellant told the police that Julien told her to drive to the apartment and wait there.
At the end of the state’s case, appellant moved for a judgment of acquittal. The state opposed the motion by pointing out appellant’s “odd maneuver” in sitting in the back seat of her own car, and then getting in the front seat and driving after Julien left the car. The state also pointed to $400 of “buy money” and the oxycodone pills on appellant as grounds to deny ap *1212 pellant’s motion for judgment of acquittal. The trial court denied the motion.
Appellant testified in her defense that her live-in boyfriend paid $400 per month for rent. Appellant called her boyfriend to obtain his share of the rent money. After speaking with him, she drove her car to Julien’s girlfriend’s house, where appellant picked up Julien. Appellant drove Julien “to go get the money that somebody owed him.” After getting the money owed to him, Julien was to pay appellant the money Julien owed to appellant’s boyfriend. Julien got out of the vehicle at the apartment; appellant did not see where Julien went or what he did. Julien came back to the vehicle with the $400 he owed appellant’s boyfriend. Appellant testified that when police officers observed her reaching into her purse, she was about to pay for gas at the gas station. Finally, appellant testified that she had the oxycodone in her purse because she had been in a “bad car accident.”
After the trial court denied appellant’s renewed motion for judgment of acquittal, the jury found appellant guilty of conspiracy to traffic in oxycodone with codefen-dants Junior Julien and Lincoln Jackson.[1] The jury acquitted appellant of trafficking in oxycodone. Appellant appeals her conviction for conspiracy to traffic in oxyco-done.
“In reviewing a motion for judgment of acquittal, a de novo standard of review applies.” Pagan v. State, 830 So.2d 792, 803 (Fla.2002). “In moving for a judgment of acquittal, a defendant admits” not only “the facts in evidence,” but also “every conclusion favorable to the adverse party that may be fairly and reasonably inferred from the evidence.” Richards v. State, 37 So.3d 925, 926 (Fla. 4th DCA 2010). “A court should grant a motion for judgment of acquittal only if ‘the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.’ ” Joseph v. State, 65 So.3d 587, 588 (Fla. 4th DCA 2011) (citation omitted).
“[T]o establish a conspiracy and appellant’s participation in it, the state must prove ‘an express or implied agreement or understanding between two or more persons to commit a criminal offense,’ and an intention to commit that offense.” Leigh v. State, 967 So.2d 1102, 1104 (Fla. 4th DCA 2007) (quoting Arguelles v. State, 842 So.2d 939, 944 (Fla. 4th DCA 2003)). “The agreement may be inferred from the circumstances; direct proof is not necessary.” Schlicher v. State, 13 So.3d 515, 517 (Fla. 4th DCA 2009). “Florida courts have generally affirmed convictions for conspiracies to buy or sell drugs where the ‘defendants are involved in a series of meetings, arrangements and negotiations to sell or buy illegal drugs that lead to such sale or purchase.’ ” Id. (quoting Leigh, 967 So.2d at 1104). “However, when the evidence establishes ‘that the defendant was merely present at the scene of the crime, had knowledge of the crime, or even aided others in the commission of the crime,’ it is inadequate, without more, to sustain a conspiracy conviction.” Jackson, 74 So.3d at 566 (citations omitted).
Further,
[o]nly where ... the defendant’s involvement in the enterprise appears to be minimal at best, evincing no prearrange-ments with the other defendants, or where ... the defendant has been acquitted of an accompanying drug trafficking charge, thereby discrediting much, if not all of the evidence against the defendant, have Florida courts been *1213 inclined to reverse such conspiracy convictions. Indeed, the typical drug trafficking transaction involving a series of clandestine meetings between several defendants and an undercover police officer which eventually leads to a sale or purchase of illegal drugs ... presents the classic example of a criminal conspiracy; by definition, such a scenario inferentially establishes, as a general rule, a prior agreement among the defendants to effect a sale or purchase of illegal drugs, else such a sale or purchase with its complicated arrangements would never have taken place.
Pino v. State, 573 So.2d 151, 152 (Fla. 3d DCA 1991) (citations omitted).
In the present case, the entirety of the evidence presented against appellant was that appellant’s car was utilized in the transaction while appellant was in the backseat, and later that appellant possessed oxycodone in a prescription bottle in her name and $400 in currency initially given to another individual by McCabe.
In Voto v. State, 509 So.2d 1291, 1293 (Fla. 4th DCA 1987), the defendant was a passenger in a car that drove to the scene of a drug transaction. The defendant got out of the car, looked around the parking lot, and spoke to some other participants in the transaction. We found the “evidence of participation in any underlying understanding or agreement” insufficient to sustain the defendant’s conviction for conspiracy, even though there was sufficient proof of the defendant’s participation as an aider and abettor. Similarly, in the related case of Pennington v. State, 526 So.2d 87, 88 (Fla. 4th DCA 1987), a defendant’s presence at the scene combined with his statement that “[fit’s in the white car over there” was found insufficient to prove his participation in a conspiracy. See also Pickover v. State, 580 So.2d 287, 290 (Fla. 4th DCA 1991) (evidence “failed to prove that appellant had any knowledge of the transaction or had been involved in a conspiracy to effectuate the sale”); Webster v. State, 646 So.2d 752, 753 (Fla. 2d DCA 1994) (conspiracy conviction reversed because “the record fails to establish any particular arrangement between” defendant and confidential informant’s acquaintance); Mickenberg v. State, 640 So.2d 1210, 1211 (Fla. 2d DCA 1994) (despite the fact that defendant was “[c]learly ... aiding and abetting,” his participation did “not reach the level of the separate crime of conspiracy”). The quantum of evidence in this case is similar to the quantum of evidence in Voto and Pennington. As in those cases, we find the state’s evidence insufficient to establish appellant’s participation in a conspiracy, since there was no evidence of any meetings, conversations, or pre-arrangements between appellant and Julien from which the jury could infer the existence of an agreement.
Additionally, as mentioned, where “the defendant has been acquitted of an accompanying drug trafficking charge,” much, if not all, of the evidence against a defendant on an accompanying conspiracy charge is discredited. Rouse v. State, 583 So.2d 1111, 1113 (Fla. 4th DCA 1991) (quoting Pino, 573 So.2d at 152). In the present case, appellant was acquitted of trafficking in oxycodone. We, therefore, are also required to discredit much of the evidence against appellant as to the conspiracy charge.
In summary, we are compelled to reverse appellant’s conviction and sentence for conspiracy to traffic in oxycodone and remand for entry of a judgment of acquittal.

Reversed and remanded with directions.

TAYLOR and GERBER, JJ., concur.

. This court reversed codefendant Jackson's conviction and sentence for conspiracy to traffic in oxycodone. Jackson v. State, 74 So.3d 563 (Fla. 4th DCA 2011).