[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12438
Non-Argument Calendar
_____

D.C. Docket No. 3:08-cr-00296-TJC-JRK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMIE DENNIS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 28, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Jimmie Dennis, Jr., appeals the district court's order revoking his supervised release and imposing a thirty-six-month sentence under 18 U.S.C. § 3583(e)(3).  On appeal, Dennis raises several arguments: (1) the district court abused its discretion by applying the incorrect standards when reviewing the evidence; (2) there was no direct evidence establishing his participation in a drug conspiracy; (3) the comments he made to his probation officer were purposefully sarcastic and should not constitute answering questions untruthfully; and (4) his sentence is both procedurally and substantively unreasonable.  For the reasons stated below, we disagree and affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background Facts and Underlying Convictions

As detailed by the presentence investigation report ("PSI"), Dennis, a career criminal, has previous convictions for: grand theft; possession with intent to deliver or sell crack cocaine; possession of cocaine; possession of marijuana; driving with a suspended license; resisting arrest without violence; fleeing and eluding a police officer; disorderly conduct; and possession of crack cocaine.  Additionally, in 1999, while Dennis was on supervised release, a jury convicted him of conspiracy to distribute cocaine and cocaine base.

That brings us to the instant proceeding.  On three occasions in June and July 2008, Dennis sold crack cocaine to a confidential informant.  In total, he was

2

responsible for 40.3 grams of cocaine base. A federal grand jury subsequently indicted Dennis on three counts of distributing five grams or more of cocaine base. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B). He subsequently pleaded guilty to one of the three counts, and the government dismissed the other two counts.

Dennis's criminal history, as calculated in the PSI, resulted in 12 criminal-history points, placing him in criminal-history category V. The statutory range was between five- and forty-years' imprisonment, and, based on a total offense level of 25, the U.S. Sentencing Guidelines' range was 100-to-125 months' imprisonment. The district court sentenced him to a prison sentence of 105 months followed by a five-year term of supervised release. The conditions of his supervised release required him, in part, not to commit another crime and to answer any questions from his probation officer truthfully. Based on several amendments to the Sentencing Guidelines, the district court reduced Dennis's prison sentence twice: in 2012, to seventy months; and, in 2015, to fifty-eight months. Later in 2015, his prison sentence ended, he was released, and his supervised release began on November 2, 2015.

### B.    Violations of Supervised Release

Approximately four years later, in 2019, Officer Joseph Pinto, Dennis's probation officer, filed a petition for summons alleging Dennis had violated the conditions of his supervised release, and subsequently filed three superseding

petitions over the following months.  The petition alleged that Dennis committed four violations of his supervised release: (1) conspiring to traffic heroin/opium or a derivative from September 2018 to June 2019, for which he had been arrested in Florida ("Violation 1"); (2) failing to truthfully identity his companion at a Lowe's Home Improvement Store on September 27, 2019 ("Violation 2"); (3) again failing to truthfully identify this companion when asked on October 3, 2019 ("Violation 3"); and (4) failing to provide an address for land that he owned in St. Johns County, Florida ("Violation 4").  In a memorandum attached to the petition, the probation officer stated that, if the district court found that Dennis had possessed a controlled substance, it would be statutorily required to revoke his supervised release and sentence him up to three years' imprisonment.  Because Dennis challenges the sufficiency of the government's evidence, we present the facts in thorough detail.

### 1.    Involvement in Drug Use and Trafficking

As to Violation 1, Detective William Campbell, a narcotics detective at the Jacksonville Sheriff's Office, was part of an investigation that involved Dennis since September 2018.  Detective Campbell had a cooperating individual, who was facing drug trafficking charges, tell him that Dennis was involved with a large quantity of heroin.  Detective Campbell told the cooperating individual to obtain a heroin sample from Dennis.  The cooperating individual did so, and Dennis went with the cooperating individual to RL Trucking, a trucking company in Jacksonville.  When

4

they arrived, Dennis went inside the business and returned with a "cellophane baggie of what appeared to be heroin," which was a free sample and was not paid for. The cooperating individual brough the sample to Detective Campbell, who conducted a field test that came back positive for heroin. Detective Campbell told the cooperating individual to continue buying from Dennis, and the next transaction was on September 21, 2018. The cooperating individual called a phone number beginning with 904-233, which the cooperating individual believed to belong to Dennis, and asked to buy half an ounce of heroin. Detective Campbell and the cooperating individual drove to RL Trucking, and the cooperating individual went to the business's gate and met an older white male who took cooperating individual's money, went inside the business, and returned with a bag of heroin. While they were driving away, the cooperating individual received a phone call, and the caller told the cooperating individual to come back because he had not been given the full amount, so they returned, and the white male gave the cooperating individual another bag. The cooperating individual stated that the caller was Dennis. Both bags field-tested positive for heroin, totaling 16 grams.

Detective Campbell had the cooperating individual set up another transaction for October 10, 2018. Detective Campbell obtained a picture of Dennis, and the cooperating individual confirmed that Dennis was who he had previously met with and that he knew Dennis "real [sic] well" and for about "15, 16 years." The

5

cooperating individual called Dennis on October 10 and asked for an ounce of heroin, and Dennis told the cooperating individual to "go on up there," which Detective Campbell and the cooperating individual took to mean RL Trucking. When they arrived, the cooperating individual again gave the money to an unknown white male, who went inside the business and returned with a bag. The bag's contents field-tested positive for heroin and weighed approximately 28.9 grams. Detective Campbell told the cooperating individual to set up another transaction for November 21, 2018.

On November 21, the cooperating individual called Dennis and asked for an ounce of heroin, and Dennis told the cooperating individual to go to RL Trucking and wait for him to get there. Detective Campbell and the cooperating individual waited, and eventually, a van pulled up that contained Dennis, who Detective Campbell recognized from his photo and whom Detective Campbell identified in the courtroom. Dennis called the cooperating individual and asked if he was in the waiting car, and Dennis left the van and walked toward the back of RL Trucking. Dennis went inside the business while the cooperating individual stayed outside, and Detective Campbell stated that he could see this from his car. The cooperating individual gave the same white male money, who went inside and returned with a bag, while Dennis remained inside the building. The contents of the bag tested positive for 29 grams of heroin. The cooperating individual did not report any direct

contact with Dennis other than the phone call. Detective Campbell told the cooperating individual to set up another transaction for January 4, 2019. The cooperating individual called Dennis on January 4, using a new 406- number that the cooperating individual stated that Dennis had given him, and asked for another ounce. When Detective Campbell and the cooperating individual returned to RL Trucking, the same unknown white male took the cooperating individual's money and gave him a bag, which tested positive for 29.9 grams of heroin. Detective Campbell was unable to identify the unknown white male. An identical transaction occurred on January 24, 2019, using the 406-number, which resulted in 29 grams of heroin.

On February 6, 2019, Detective Campbell had the cooperating individual contact Dennis using the 406-number, and when they went to RL Trucking, an unknown black male told the cooperating individual that he did not recognize him. A well-known drug dealer, Roosevelt Lewis, then exited the business and spoke to the cooperating individual in the parking lot, within Detective Campbell's sight, and the dealer and the cooperating individual then went inside another building. Lewis said something to the unknown black male, who went inside the main building, retrieved a package, and gave it to Lewis, who in turn gave it to the cooperating individual. The package contained 28.6 grams of heroin. Lewis had told the cooperating individual that he did not "have to go through him no more," which

Detective Campbell and the cooperating individual took to mean that Dennis was a middleman, and thus, in March 2019, the cooperating individual went straight to RL Trucking without calling Dennis and obtained a package of heroin.

Detective Campbell subsequently applied for a wiretap to further his investigation. For his application, he learned Dennis's address by looking at location data for the two phone numbers: the 233-number and a 406-number. He wiretapped the 406-number, which belonged to Dennis, and a 904-number, which belonged to another individual being investigated by authorities from Clay County, Florida, for buying drugs in connection with RL Trucking. The Clay County investigators believed Lewis was in charge of the drug operation. From the wiretap on Dennis's phone, Detective Campbell learned that Dennis was involved in selling Roxicodone and Dilaudid pills as well as heroin. Lewis was the supplier of the Roxicodone, which Detective Campbell learned by recognizing Lewis's phone number and voice. After thirty days, Detective Campbell extended the wiretap for Dennis's phone.

In one of the phone calls to Dennis, someone asked for either "beach sand tan or pecan tan," in reference to different colors of heroin. Dennis then called Lewis, and the pair discussed "blue" pills, which referred to Roxicodone. He also received a call from an individual whom he referred to as "Bull Dog," and asked for "boy"— a slang term for heroin. The two discussed getting pills and meeting up in Gainesville, Florida, for a transaction. Detective Campbell wiretapped Lewis's

8

phone, and overheard phone calls in May 2019 between Lewis and Dennis where the two discussed Lewis supplying Dennis will pills. Detective Campbell then applied for an arrest warrant for Dennis accusing him of trafficking in opium or a derivative in violation of the Florida statute referring to the distribution of heroin or another opiate.

### 2.    Providing a Probation Officer with Untruthful Information

As to Violations 2 and 3, Officer Pinto had visited Dennis at the Lowe's on September 27, 2019, and spotted him with a known confidant to Dennis, Jaisha Janee Bryant. When Officer Pinto asked Dennis who the woman at the checkout line was, Dennis replied that her name was "Betty Sue." Upon Officer Pinto's instruction to Dennis to report to the probation office, Dennis then responded that her name was "Lisa Lewis." Dennis then alleged that the woman must have given him a false name, to which Officer Pinto instructed Dennis not to associate with Bryant anymore because she had been known as a community drug user.

### C.    Revocation Hearing and Sentencing

The magistrate judge conducted a combined preliminary and final revocation hearing on March 3, 2020, where the government called Officer Pinto, and Detective Campbell. After hearing the testimony as presented above, the magistrate judge found that, as to the preliminary portion of the hearing, the evidence established probable cause to believe that Dennis had committed Violations 1, 2, and 3, but not

9

Violation 4. And, as to the final portion of the hearing, the evidence established by a preponderance of the evidence that he had committed Violations 1 through 3, but not Violation 4. The magistrate subsequently issued a report and recommendation in which he found that the government met its burden as to Violations 1 through 3 but not 4. The magistrate recommended that the district court order Dennis to show cause why his supervised release should not be revoked and that Violation 4 should be dismissed.

Dennis filed objections to the report and recommendation. Among other things, he argued that the magistrate judge did not adequately explain why it found that the violations were proven by a preponderance of the evidence and that there was no direct evidence of his involvement in the facts giving rise to Violation 1. He argued that the voice identifications of Dennis were unreliable because Detective Campbell relied solely on the cooperating individual's identification. He further argued that the evidence did not show his actual or constructive possession of the drugs because he did not have control over RL Trucking and that the field tests used to identify the drugs as heroin were unreliable. Finally, he argued that although the magistrate judge found Detective Campbell to be credible, his testimony contradicted the statements he previously made in a warrant application. As for Violations 2 and 3, he argued that his responses did not constitute violations because he did not deceive or obstruct his probation officer and that there was no evidence

that his responses hindered his supervised release.  He insisted his untruthful responses were "sarcastic" and did not constitute lying.

The district court, after conducting *de novo* review, overruled Dennis's objections, adopted the report and recommendation, found the government had proven Violations 1, 2, and 3, dismissed Violation 4, and ordered Dennis to show cause why his supervised release should not be revoked.  At the June 17, 2020, hearing, the government recommended a sentence of 36 months' imprisonment, arguing that the heroin conspiracy was a serious offense and pointing to Dennis's criminal history and history of violating probation, which indicated that only the maximum sentence would be appropriate.  The government stated further that supervised release would be unnecessary and that, to its understanding, the state would not prosecute the conspiracy if Dennis were sentenced to 36 months' imprisonment.  Dennis, in turn, argued that the state's decision not to prosecute him on the conspiracy charge showed the evidence against him was weak.

The district court stated that it would have preferred for the state charges to have been decided first, but the magistrate judge was nevertheless correct in finding by a preponderance of the evidence that Dennis had engaged in serious drug activity. It found that Dennis committed a Grade A violation and noted his history of drug crimes.  Looking at his past conduct, the district court stated that it was difficult to think that Dennis would not commit more crimes in the future.  It stated that it had

11

considered Dennis's allocution of remorse, the 18 U.S.C. § 3553(a) factors, "including the nature and circumstance of the charged offense, including Mr. Dennis's history, including the need for just punishment, [and] including the need for deterrence," and the Sentencing Guidelines.  It found that his criminal history category was V and the Sentencing Guidelines range was 30 to 36 months.  The court sentenced Dennis to 36 months' imprisonment.  Dennis renewed his objections to the report and recommendation and objected to the reasonableness of his sentence. This appeal follows.

## II.    ANALYSIS

### A.    Finding Violations of the Conditions of His Supervised Release

First, Dennis argues the government failed to prove the relevant supervised-release violations by a preponderance of the evidence.  We review the district court's revocation of supervised release for abuse of discretion, *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014), and we will not overturn a district court's factual findings unless they are clearly erroneous, *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).  A district court abuses its discretion when it commits a clear error of judgment, "applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."  *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019)).  A finding is

12

clearly erroneous when we are "left with a definite and firm conviction that a mistake has been committed." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (quoting *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010)). If the evidence allows for two reasonable views, then a district court's choice between the two cannot be clearly erroneous. *Id.*

As an initial matter, we find no merit to Dennis's argument that the magistrate judge and the district court applied the incorrect standards of review. In the report and recommendation, the magistrate judge identified and applied—correctly—the preponderance-of-the-evidence standard. *See* 18 U.S.C. § 3583(e)(3). To the extent that Dennis takes issue with the magistrate judge's gratuitous implication that the evidence would not satisfy a "higher burden," it is irrelevant to the issue of whether the government satisfied the preponderance-of-the-evidence standard. As for the district court, in reviewing Dennis's objections, it applied a *de novo* standard. *See* Fed. R. Crim. P. 59(b)(3). Thus, there was no abuse of discretion as to the standards of review used because neither the magistrate judge nor district court applied the wrong standard. *See Harris*, 989 F.3d at 911–12.

A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that he or she violated the terms of his supervised release. § 3583(e)(3); *see also United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004) (explaining that preponderance of the evidence means that the existence

13

of a fact is more likely true than not).  We find that the above-discussed evidence overwhelmingly establishes that Dennis committed the alleged violations, which we discuss in turn.

### 1.    Violation 1

Florida law prohibits conspiring to traffic illegal drugs, which includes selling, delivering, or possessing heroin, opium, or a derivative.  Fla. Stat. § 893.135(1)(c)(1), (5).  A drug conspiracy, the existence of which may be inferred by the fact finder, "exists where there is an express or implied agreement between two or more persons to commit a criminal offense and an intention to commit the offense." *Vasquez v. State*, 111 So. 3d 273, 275 (Fla. Dist. Ct. App. 2013) (noting that a conspiracy can be found to exist when the "defendants [were] involved in a series of meetings, arrangements and negotiations to sell or buy illegal drugs that lead to such sale or purchase" (quoting *Schlicher v. State*, 13 So. 3d 515, 517 (Fla. Dist. Ct. App. 2009))).

For Violation 1, the record overwhelmingly demonstrates that Dennis was involved in a conspiracy to distribute heroin and opioids.  Dennis gave a sample of heroin to the cooperating individual at RL Trucking, facilitated subsequent drug transactions at the business with an unknown white male, and spoke with the owner of the business about obtaining opioids on several phone calls.

14

According to Detective Campbell's testimony, the cooperating individual said that Dennis was the speaker on the phone and that he was calling numbers given to him by Dennis.  The wiretapped calls also showed that Dennis spoke to Lewis about Roxicodone and pills using coded language and to another individual about heroin. These facts provided enough support for the district court to properly infer that, under Florida law, Dennis had entered into an agreement with Lewis and others to distribute heroin and other opium derivatives.  Although he contends there is no direct evidence tying him to drug sales, conspiracy criminalizes an agreement to commit a crime.  *See Vasquez*, 111 So. 3d at 275; Fla. Stat. § 893.135(1)(c)(1), (5). Of this, we find sufficient record evidence.

As for Dennis's garden-variety arguments, we do not find any of them persuasive.  For instance, he challenges Detective Campbell's voice identification. First, the rules of evidence do not apply in revocation proceedings.[1]  *See* Fed. R. Evid. 1101(d)(3); *see also* Fed. R. Evid. 901(b)(5); *Brown v. City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994) ("Once a witness establishes familiarity with an identified voice, it is up to the [factfinder] to determine the weight to place on the witness's voice identification.").  Moreover, the identification was reliable because the cooperating individual, who identified Dennis's voice as being on the phone

---

[1] In any event, Dennis has not challenged the government's reliance on hearsay during the hearing in his brief, so he has abandoned this argument.  *See United States v. Grimon*, 923 F.3d 1302, 1308 (11th Cir. 2019).

calls, had known Dennis for fifteen years.  To the extent that Dennis challenges the credibility of the government's two witnesses, their testimony was not so improbable that we should reject the district court's finding that the witnesses were credible.  *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2003) (explaining that a "trial judge's . . . choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony" (emphasis removed) (quoting *United States v. Cardona-Rivera*, 904 F.2d 1149, 1152 (7th Cir. 1990))). Indeed, credibility determinations are the province of the factfinder, and we ordinarily will not second-guess such a determination.  *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994).

Accordingly, the district court did not clearly err in finding that Dennis engaged in a drug conspiracy in violation of Florida law.  We find the evidence presented at the revocation hearing to be overwhelming, easily satisfying the preponderance-of-the-evidence standard.

### 2.    Violations 2 and 3

For Violations 2 and 3, Dennis was required to truthfully answer the questions from his probation officer.  Officer Pinto, however, testified that on two occasions, Dennis gave a false name for Bryant.  Thus, the evidence shows that it was more likely than not that he failed to truthfully answer Pinto's questions, violating the conditions of his supervised release.  *See Trainor*, 376 F.3d at 1331.  Additionally,

16

we find his argument that he "only technically violated" the condition as an implied concession of these violations. Even if it is true that Dennis "only technically violated" the condition, the condition did not require that Dennis intended to defraud or otherwise deceive the probation officer, so his "technical" violation was sufficient to find that he had violated the condition. Thus, the finding that Dennis gave false statements to his probation officer was not clearly erroneous. *See Harris*, 989 F.3d at 911–12; *Almedina*, 686 F.3d at 1315.

Because the district court did not clearly err in finding that Dennis committed the alleged violations, it did not abuse its discretion in revoking his term of supervised release.

**B.      Procedural and Substantive Reasonableness of Dennis's Sentence**

Dennis next argues that his thirty-six-month sentence is procedurally and substantively unreasonable because the district court improperly applied its personal judgment when sentencing him. He contends his sentence is procedurally unreasonable because the district court relied on clearly erroneous facts, incorporating his argument from Issue 1. And he contends that his sentence is substantively unreasonable because the district court only considered his recidivism risk and criminal history, which it overemphasized, but did not consider other § 3353(a) factors such as his individual history and the nature of the charges.

17

We review for reasonableness the sentence imposed upon revocation of supervised release, which is akin to review for abuse of discretion. *Vandergrift*, 754 F.3d at 1307; *Gall v. United States*, 552 U.S. 38, 51 (2007). The party challenging the sentence bears the burden of establishing that it is unreasonable based on the record and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

When reviewing a sentence's reasonableness, we follow a two-step process. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). First, we ensure that the sentence is procedurally reasonable by reviewing whether the district court miscalculated the guideline range, treated the Sentencing Guidelines as mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately explain the chosen sentence. *Id.* at 936. A district court is not required to explicitly discuss or state each § 3553(a) factor, as the court's acknowledgement that it has considered the defendant's arguments and the § 3553(a) factors is sufficient. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Next, we consider "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors." *Trailer*, 827 F.3d at 936. The weight given to each § 3553(a) factor is committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors. *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007). Nevertheless,

18

"[a] district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)). Under the abuse-of-discretion standard, we will reverse only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1189–91 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)) (recognizing that a district court must apply its judgment, based on the facts of the case, when imposing a sentence). Although we do not automatically presume a sentence falling within the guideline range is reasonable, we ordinarily expect such a sentence to be reasonable. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).

Under § 3583(e)(3), a court may revoke supervised release and impose a prison sentence for all or part of the supervised-release term "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." Those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need for the sentence to

afford adequate deterrence, protect the public, and provide the defendant with appropriate correctional treatment; the kinds of available sentences; the applicable Sentencing Guidelines range; any pertinent policy statement; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. § 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7).  Absent from the factors that the district court may consider under § 3583(e) is § 3553(a)(2)(A), which directs a district court imposing a sentence to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  § 3553(a)(2)(A).  However, we have held that the text of § 3583(e) does not explicitly forbid a district court from considering § 3553(a)(2)(A), and we have not held that a district court errs by considering § 3553(a)(2)(A) when imposing a revocation sentence.  *Vandergrift*, 754 F.3d at 1308.

The commentary to the Sentencing Guidelines indicates that a supervised release violation is a "breach of trust" and directs the court to "sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. ch. 7, pt. A, intro.

Here, Dennis's sentence is procedurally reasonable.  The district court did not rely on any clearly erroneous facts when finding that the violation occurred, as

20

explained above, and those same facts informed his sentence. To the extent that Dennis argues that the district court impermissibly applied its personal judgment, it was allowed to do so. And the district court considered the Sentencing Guidelines range and did not otherwise commit a procedural error.

Dennis has also failed to show that his sentence is substantively unreasonable. The district court explicitly stated that it had considered the § 3553(a) factors and listed several of them, and it was not required to explicitly address each one. To the extent that Dennis argues that the district court did not consider his personal history, he is incorrect because the district court considered his allocution, in which he mentioned his grandchildren, his employment, and his desire to have another chance. The district court also considered the nature of the charges, including the fact that the state was likely not going to prosecute him. The district court had discretion to weigh Dennis's criminal history—including the fact that he had previously violated probation several times—and there is no evidence that the district court improperly relied on this factor. Therefore, the district court did not abuse its discretion in finding that Dennis's extensive criminal history and involvement in a drug conspiracy while on supervised release warranted a greater sentence. The fact that Dennis's sentence is within the Sentencing Guidelines range is also an indicator of its reasonableness.

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's order revoking his supervised release and imposing a thirty-six-month sentence.

**AFFIRMED.**